**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Irwin POSNER, Defendant–Appellant.**

No. 87–6149.

United States Court of Appeals,
Fifth Circuit.

March 16, 1989.

Kent Schaffer, Michael Ramsey, Houston, Tex., for I. Posner.

Scott Behnke, Frances H. Stacy, Paula C. Offenhauser, Asst. U.S. Attys., Henry Oncken U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GARZA, JOLLY and JONES, Circuit Judges.

GARZA, Circuit Judge.

Appellant was convicted in district court for the Southern District of Texas, under the Controlled Substances Act, 21 U.S.C. § 841(a)(1), for knowingly or intentionally possessing in excess of 100 kilograms of marihuana, with intent to distribute. Appellant was also convicted of attempting or conspiring to possess more than 100 kilograms of marihuana, with intent to distribute, under 21 U.S.C. § 846. He argues that the evidence presented at trial was insufficient to support the jury's verdict that he possessed marihuana, either as an aider and abettor or as a co-conspirator. In addition, he argues that the district court denied him his right to allocution, thereby entitling him to a resentencing hearing, and that the trial judge improperly imposed a term of mandatory supervision as part of his sentence. We conclude that the evidence was sufficient to support the jury's verdict on the possession count of appellant's conviction. We are convinced, however, that he was denied his right to allocution and that he must be remanded to the district court for a new sentencing hearing. It is also clear that the trial judge properly assessed an eight-year special parole term but that the Judgment and Commitment Order reflects a sentence of eight years of mandatory supervision. We therefore affirm in part, reverse in part and remand for a resentencing hearing and for correction of the clerical error appearing on the Judgment and Commitment Order.

## Background

On February 5, 1987, agents from the Drug Enforcement Agency ("DEA") completed a "reverse sting operation" against appellant Irwin Posner and appellant's brother, Robert Posner. As the result of negotiations that spanned approximately ten months, the Posners had agreed to purchase 250 pounds of marihuana from agent Michael Spasaro for $75,000 in cash. The culmination of the operation occurred in the parking lot of the Hilton Hotel in Houston, Texas. On the day of appellant's arrest, DEA agent Nicholos Console, an assistant to agent Spasaro in the undercover operation, accepted possession of a van that the Posners had rented and loaded it with 250 pounds of marihuana from the DEA vault. He then drove the van to the Hilton Hotel parking lot where he met Gary Zbanik, a co-conspirator of the Posners. Zbanik inquired of agent Console whether it was "all there," whereupon agent Console opened the back door of the van and split open one of the cardboard boxes containing the marihuana. Zbanik stated that it looked fine and agent Console handed him the keys. Zbanik then entered the van and settled into the driver's seat. According to agent Console's trial testimony, as Zbanik attempted to start the vehicle agent Console gave the signal and the seven or eight officers who had been "staking out" the parking lot arrested Zbanik at approximately 4:15 p.m. Robert Posner was arrested inside his hotel room. Appellant Irwin Posner, who had been observed leaving the hotel at about 3:30 p.m., was arrested one mile from his residence at approximately 4:30 p.m..

Appellant was indicted for attempting or conspiring to possess, with intent to distribute, in excess of 100 kilograms of marihuana in violation of 21 U.S.C. § 846 (1970).[1]

---

1. Section 846 provides:
   Any person who attempts or conspires to commit any offense defined in this sub-chapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the

He was also indicted for knowingly or intentionally possessing in excess of 100 kilograms of marihuana, with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1970).[2] Robert Posner pleaded guilty to the marihuana counts against him. Irwin Posner's separate trial commenced on September 14, 1987 and he was convicted on September 21, 1987.

The trial court sentenced appellant to twelve years imprisonment on each of the two counts upon which he was convicted, the sentences to run concurrently. In addition, he was assessed an eight-year special parole term. The Judgment and Commitment Order, however, reflects that he was sentenced to eight years of mandatory supervision.

### Discussion

*Possession.*

Appellant asserts that we must reverse his conviction because the evidence was insufficient to establish his guilt for the substantive offense of possession of marihuana with intent to distribute it. He argues that his co-conspirator, Zbanik, was arrested before possession of the van or the contraband ever passed from the DEA agents to Zbanik. Appellant urges that it was not possible for him to have aided and abetted each element of the substantive offense because Zbanik never reduced the contraband to possession.

In support of this position, appellant cites the Ninth Circuit case *United States v. Batimana,* 623 F.2d 1366 (9th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980). In *Batimana,* a very tightly controlled police reverse sting operation resulted in the conviction of three defendants for possession with intent to distribute a certain quantity of heroin. The defendants had agreed to purchase 500 grams of heroin from an individual who turned out to be a DEA confidential informant. They met the informant at the Los Angeles airport and drove with him to the Mariott Hotel where they all proceeded to one of the hotel rooms. The heroin was later delivered to the room and the police arrested the defendants shortly thereafter. The Ninth Circuit reversed the convictions of two of the defendants, finding that there was insufficient evidence that either of them had "asserted dominion and control over the heroin," even though one of the defendants had attempted to place his hands inside the bag of heroin and the other one had placed the chain lock on the door and then walked across the room to look at the heroin. Under the rule in the *Batimana* case, the exercise of dominion and control of narcotics requires an ability " 'to assure production, without difficulty to a customer.' " *Batimana,* 623 F.2d at 1369 (quoting *United States v. Barnett,* 468 F.2d 1153, 1155 (9th Cir.1972)). Appellant urges this court to adopt a similar rule.

At the outset we observe that the standard of review in a criminal case where the sufficiency of the evidence is challenged is whether the jury could have reasonably found that the evidence establishes guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). In addition, we must view the evidence and all reasonable inferences in a light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Thompson,* 603 F.2d 1200, 1204 (5th Cir.1979).

Possession of a controlled substance with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), may be either actual or constructive. *United States v. Martinez,* 588 F.2d 495, 498 (5th Cir.1979). Construc-

---

commission of which was the object of the attempt or conspiracy.
21 U.S.C. § 846 (1970).

**2.** Section 841 provides:
(a) except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense or possess with intent to manufacture, distribute, or dispense, a controlled substance; ...
21 U.S.C. § 841(a) (1970).

tive possession is defined as "ownership, dominion or control over the contraband itself, or dominion or control over the premises or the vehicle in which the contraband was concealed." *Id.* (quoting *United States v. Salinas–Salinas,* 555 F.2d 470, 473 (5th Cir.1977)).

The Third Circuit has found constructive possession of contraband to exist under circumstances remarkably similar to those presented here. In *United States v. Martorano,* 709 F.2d 863 (3rd Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed. 2d 682 (1983), defendant Martorano and several co-conspirators agreed to purchase approximately 200 gallons of phenyl-2-propanone ("P–2–P") from an undercover agent named Ronald Raiton. Martorano and Raiton devised a plan whereby Raiton would rent a van, place the P–2–P in the back, and park it near Philadelphia's Rittenhouse Square. The two were then to meet in the Square where Raiton would turn over to Martorano the keys and registration to the van in exchange for a paper bag containing payment for the P–2–P.

Raiton rented the van according to the agreement; however, he delivered the van to FBI agents who loaded it with 52 gallons of P–2–P that had been acquired from a federal storage facility. The agents then placed a specially purchased padlock on the van's rear doors and drove it to a location near Rittenhouse Square where they parked and maintained uninterrupted surveillance of it.

The agents gave the keys to the van and to the padlock to Raiton and told him where the van was parked. Raiton then went to Rittenhouse Square and met Martorano as scheduled. Martorano handed Raiton the cash and Raiton gave the keys to the van and padlock to Martorano along with a slip of paper indicating the van's location. Martorano later gave these keys to a co-conspirator named DeTullio who went to the van, unlocked and entered it, inserted the key into the ignition, and sat in the driver's seat for approximately one to one-and-a-half minutes before he was apprehended by FBI agents and the Philadelphia police.

The court of appeals interpreted the phrase "dominion or control" to mean "the ability to reduce an object to actual possession." *Id.* at 869. It concluded that Martorano acquired contructive possession of the contraband when he took actual possession of the keys to the van and to the padlock. He remained in constructive possession, according to the court, after he gave the keys to his agent, who subsequently took actual possession of the van. *Id.* That the conspirators were arrested before they had the opportunity to dispose of the P–2–P did not negate their possession of it with the intent to distribute it.

We recently cited with approval the rules set out in the *Martorano* case in *U.S. v. Toro,* 840 F.2d 1221 (5th Cir.1988). In *Toro,* the defendant exchanged a sum of money for a bag of cocaine given to him by undercover DEA agents. He locked the drugs in his briefcase, whereupon he was immediately arrested. Defendant argued that he was never able to reduce the contraband to his dominion or control because the presence of numerous DEA agents prevented him from leaving the scene of the arrest or from disposing of the cocaine. Citing *Martorano,* we stated that defendant's brief dominion over the drugs was "sufficient to justify conviction" under 21 U.S.C. § 841(a)(1). *Id.* at 1237–38. We declined to define "possession" in a way that would afford defendant an opportunity to escape or actually to distribute the cocaine. We noted that such a definition would "place an impossible burden on police." *Id.* at 1238.

In *Martinez, supra,* a Texas Border Patrol agent stopped two vehicles at the same checkpoint at approximately the same time. The agent detected the odor of marihuana emanating from the trunk of one of the vehicles. He learned that the driver of the other vehicle possessed the key to the offending trunk as well as the keys to two suitcases and two chests found within the trunk, all of which contained marihuana. We held that "constructive possession is the ability to reduce an object to actual possession." *Martinez,* 588 F.2d at 498. Notwithstanding that appellant neither

owned nor drove the car in which the contraband was found, we concluded that he shared in the dominion and control over the vehicle and the marihuana because he possessed the key to the trunk of the car as well as the keys that unlocked the two chests containing the contraband found inside the trunk.

Other circuits have found constructive possession under circumstances similar to those discussed in the cases above. *See U.S. v. Zandi,* 769 F.2d 229 (4th Cir.1985) (citing rule established in *Martorano* with approval); *United States v. Damsky,* 740 F.2d 134 (2d Cir.1984), *cert. denied,* 469 U.S. 918, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984) (defendant had constructive possession upon receipt of keys to camper that contained hashish); *United States v. Jones,* 676 F.2d 327 (8th Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 71, 74 L.Ed.2d 71 (1982) (defendant obtained constructive possession when he was given key to DEA agent's car trunk wherein marihuana had been stored in anticipation of transfer).

■ In the present case, there is no question that the van belonged to Irwin Posner; he had rented it for the purpose of transporting the marihuana that he received from the undercover agents. He paid for the marihuana; he instructed agent Console to drive the van with the marihuana to the Hilton Hotel parking lot; he directed his co-conspirator, Zbanik, to retrieve the van and the marihuana from agent Console. Zbanik accepted the keys to the van, he inspected the marihuana, he entered the van and attempted to start it. All of this evidence, when viewed in the light most favorable to the government, was sufficient to allow a reasonable jury to conclude that actual possession of the contraband passed to Zbanik when he took possession of the keys to the van. That he entered the vehicle and attempted to start it is further evidence to support the jury's conclusion. Such a conclusion is supported, as well, by the law of this circuit and of others. We therefore find the evidence sufficient to justify appellant's conviction in the mind of a reasonable juror.

*Allocution.*

Appellant claims that the trial court denied him his right to allocution at his sentencing hearing because his attorney was given an opportunity to speak on his behalf prior to sentencing but appellant was allowed no such opportunity himself. Federal Rule of Criminal Procedure 32(a)(1)(C) provides: *"[b]efore imposing sentence,* the court shall ... (C) address the defendant *personally* and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of the sentence." [emphasis added]. Fed.R. Cr.P. 32(a)(1)(C).

■ The record indicates that a colloquy between Judge DeAnda and appellant's counsel took place at the beginning of appellant's sentencing hearing. The discussion pertained to the possession argument, raised by appellant at trial and on appeal, and to the presentence investigation report on the appellant. At the conclusion of this colloquy, the judge passed sentence in open court. Appellant was given no opportunity, before Judge DeAnda recited the sentence, to speak personally on his own behalf. Appellant did argue that he needed additional time before surrendering to the marshal, for the purpose of getting his business affairs in order. He spoke on this subject, however, only after Judge DeAnda had passed sentence upon him. Accordingly, appellant must be granted a resentencing hearing at which the court must give him an opportunity personally to speak in his own behalf before sentence is once again passed upon him.

*The Judgement and Commitment Order.*

■ In open court, Judge DeAnda assessed "a special parole term of not less than eight years on count eight ... of the indictment." The Judgment and Commitment Order, however, recites an eight-year term of supervised release, a sentence that the Sentencing Reform Act of 1984 precludes for the offense of which defendant was convicted. *See United States v. Byrd,* 837 F.2d 179 (5th Cir.1988) (district court not authorized to impose a term of super-

vised release where defendant was convicted of a crime that occurred before November 1, 1987).

Federal Rule of Criminal Procedure 36 provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders." Since appellant shall be remanded to the district court, pursuant to this decision, for a resentencing hearing, the Judgment and Commitment Order issued pursuant to that proceeding will reflect the appropriate sentence thereby imposed.

### Conclusion

For the reasons stated above, we affirm the district court's conviction of appellant under 21 U.S.C. § 841(a)(1). We remand appellant to the district court for a resentencing hearing at which time he shall be afforded his right to allocution. We are confident that the Judgment and Commitment Order issued pursuant to appellant's resentencing will not contain the type of clerical error referred to above.