**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Terry Dean SMITH, Defendant–Appellant.**

No. 90–4364.

United States Court of Appeals, Fifth Circuit.

April 24, 1991.

Shirley Baccus–Lobel, Dallas, Tex., for defendant-appellant.

Terry Dean Smith, pro se.

Tonda L. Curry, Larry Eastepp, Asst. U.S. Attys., Bob Wortham, U.S. Atty., Tyler, Tex., for plaintiff-appellee.

Before GOLDBERG, HIGGINBOTHAM, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Terry Dean Smith was convicted in federal district court on three counts of illegal possession of firearms. Although he attacks his conviction and sentence on numerous grounds, we are persuaded by none and therefore affirm.

## I.

On July 16, 1988, state police obtained a warrant to arrest defendant Terry Dean Smith and search a house located at 1105 Wood Heights in Lewisville, Texas. State and federal agents participated in executing the warrant. The only people found in the house were Shyane Smith, the defendant's estranged wife, and the Smiths' infant son. Randy Smith, the defendant's cousin, was found asleep in the backyard.

The odor of amphetamine permeated the house, and six guns, four of them loaded, were recovered from various rooms. Glassware and condenser tubes known to be used in the manufacture of amphet-

amine were stashed in an upstairs closet and later determined to bear the fingerprints of both the defendant and Randy Smith. Randy Smith, who attempted to flee, was arrested for possession of amphetamine. Shayne Smith was neither arrested nor charged with any offense.

Two days later, on July 18, officers returned to 1105 Wood Heights with another warrant for the defendant's arrest for possession of amphetamine. Smith was hiding in the upstairs closet. An officer obtained Shyane Smith's written consent to search the premises. Pursuant to this search, the officers seized a file containing various papers, including telephone bills for March and April at that address bearing the defendant's name. The officers also seized sexually explicit photos of the defendant. Although the defendant was taken into custody and "booked," he was never charged with any violation of state law.

Fourteen months later, in September 1989, a federal grand jury returned a three-count indictment charging the defendant with federal firearms violations.[1] After arrest, Smith moved to suppress the evidence seized by the government. The district court denied the motion, and a jury then found him guilty on all counts. Smith timely appealed.

## II.

Smith first claims that his arrest and the contemporaneous search of the 1105 Wood Heights residence on July 18 violated the fourth amendment in two ways.

## A.

■ Initially, he challenges the arrest warrant. This case arose out of a state investigation. On July 16, 1988, Lewisville police sought and obtained from state court both a search warrant *and* an arrest warrant. *See* Tex.Code Crim.Proc. Code art. 18.03 (Vernon 1990). State officers executed the search warrant at his house that day, but unable to locate Smith, they did not execute the arrest warrant.

Two days later, when the officers found Smith, they sought another warrant for the defendant's arrest. Officer Robert Ellis's affidavit, witnessed and signed by a state district judge, states:

> [Affiant, Robert Ellis,] respectfully requests that a warrant issue for the arrest of TERRY DEAN SMITH to answer for the felony offense of POSSESSION OF A CONTROLLED SUBSTANCE in accordance with the laws of the state of Texas.

Despite Officer Ellis's unambiguous request for a *warrant,* the court clerk mistakenly issued a document authorizing the Lewisville police to serve a copy of an *indictment* on the defendant. In our view, this error does not nullify the procedural protections accorded the defendant by the July 16 arrest warrant. Because the July 16 arrest warrant, issued by a neutral and detached magistrate, was valid as of defendant's arrest 48 hours later, the officers' failure to obtain a second arrest warrant on July 18 in no way violated his fourth amendment rights. The district court properly denied defendant's motion to suppress evidence obtained as a result of his arrest.

## B.

■ Smith also challenges the validity of the July 18 warrantless search of the 1105 Wood Heights residence. The government asserts that the warrantless search was constitutional because it was undertaken with valid consent of Shyane Smith, his estranged wife.[2] Defendant counters that

---

**1.** Smith was charged as a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), subject to sentence enhancement pursuant to 18 U.S.C. § 924(e)(1), because he had previously been convicted of three violent felonies or serious drug offenses. Counts two and three charged Smith with possession of a firearm with an obliterated serial number and receipt and possession of an unregistered firearm, both in violation of 26 U.S.C. § 5861.

**2.** Because we find the consent search valid, we do not address the government's threshold claim that Smith does not have "standing" to object to the search. *See Rakas v. Illinois,* 439 U.S. 128, 148–49, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978). Nor do we reach defendant's contention that the government could take mutually inconsistent factual positions that Smith lacked "standing" under the fourth amendment notwithstanding illegal "possession" of the fire-

she was only an occasional visitor, not an owner or occupant of the residence, and could not consent to a search. This argument is without merit.

Consent to search may be obtained from a third party with common authority over the premises to be searched. *Illinois v. Rodriquez,* —— U.S. ——, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990); *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). A person who has joint control over the premises may validly consent to its search. *Frazier v. Cupp,* 394 U.S. 731, 740, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969). As we said in *United States v. Rizk,* 842 F.2d 111, 112 (5th Cir.1988), *cert. denied,* 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988), the inquiry is

> whether the consenting party and the party claiming the Fourth Amendment violation have joint access to and control of it for most purposes, so that it is reasonable to recognize that either user had the right to permit inspection of the property and that the complaining co-user had assumed the risk that the consenting co-user might permit the search.

Under this test, Shyane Smith's authority over the premises was sufficient to justify the search made pursuant to her consent. According to Officer Ellis's testimony, Mrs. Smith was a co-lessee of the residence. She and the defendant had apparently lived there during a portion of their marriage. When divorce proceedings began, Mrs. Smith was granted exclusive use, possession, and control of the "marital residence," although she obviously allowed the defendant to continue residing there.[3] By accepting this offer, Smith assumed the risk that his wife, who retained access to and joint control of the premises, would consent to a search. While the government met its burden of proof, defendant produced no evidence that his wife's access to the residence was limited. *See United States v. Baldwin,* 644 F.2d 381, 383 (5th Cir.

1981). Accordingly, the district court properly refused to suppress the evidence seized during the search of the residence.

### III.

Smith next asserts that the evidence was insufficient to prove that he actually possessed any of the firearms found at the residence. Viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict, we determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Posner,* 868 F.2d 720, 722 (5th Cir.1989).

Possession may be either actual or constructive. *Posner,* 868 F.2d at 723. The government theorized that defendant, as a resident of the house at 1105 Wood Heights, constructively possessed the firearms found there. "Constructive possession" has been defined as ownership, dominion, or control over the contraband itself, *or* dominion or control over the premises in which the contraband is concealed. *Id.* at 723; *United States v. Martinez,* 588 F.2d 495, 498 (5th Cir.1979). Under the latter alternative, the evidence sustains defendant's constructive possession.

When the officers seized the firearms from the residence on July 16, before they found defendant, Shyane Smith told them that she did not live there but had brought her son to visit his father. The officers confirmed her statement to the extent that they noticed an overnight bag and the lack of women's clothing in the house. Their search uncovered glassware and condenser tubing used in manufacturing amphetamine, which bore the defendant's fingerprints. Officers also found pictures of the defendant in the house as well as several telephone bills for the residence that were addressed in the defendant's name. Smith

arms. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

**3.** Although it is not absolutely clear, we assume that 1105 Wood Heights was in fact the Smith's

"marital residence," since there was no evidence that the Smiths resided elsewhere during their marriage.

acknowledged his connection with the house because, after learning of the search, he telephoned the Lewisville police department to inquire whether a warrant had been issued for his arrest.

Two days later, officers returned to the residence to arrest defendant, and found him hiding in the same closet where drug paraphernalia had been previously discovered. Smith's presence confirmed his connection to the house and its contents. Moreover, Officer Ellis testified at trial that when he was filling out a property receipt after Smith was arrested, Smith reported his address as 1105 Wood Heights. Smith telephoned Officer Ellis after his arrest seeking the return of "his stuff" which had been taken from the residence on July 16. Officer Ellis immediately drove to the residence at 1105 Wood Heights and found the defendant there. This evidence, viewed in the light most favorable to the government, was sufficient to allow a reasonable jury to conclude that Smith occupied and exercised dominion or control over the 1105 Wood Heights residence.

██ Even if the evidence proved that he was an occupant of the house, Smith contends, at least one other person (Randy Smith) also lived there. Accordingly, defendant submits that the government had to prove additional facts other than possession of the premises in order to establish his knowing dominion and control over the firearms. He relies upon *Guiton v. State*, 742 S.W.2d 5, 8 (Tex.Crim.App.—1987), in which the Texas Court of Criminal Appeals held that

> when the accused is not in *exclusive* possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of or control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.

*Id.* at 8 (emphasis added) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Crim. App.—1981)). Such additional facts have included proof that the contraband was in plain view, *Deshong*, 625 S.W.2d at 329, or

proof that the contraband was conveniently accessible to the accused. *Hahn v. State*, 502 S.W.2d 724, 726 (Tex.Crim.App.1973). Appellant advocates a similar "affirmative link" rule of proof in federal joint possession cases.

Analytically, the "affirmative link" concept appears to be less a "rule" than a rule of thumb suggesting the common-sense notion that a person may possess property like a house but not necessarily jointly possess the contraband found in the house. *But cf. Rakas v. Illinois, supra* n. 2. As a rule of thumb, an "affirmative link" concept reinforces the requirement that possession of contraband depends upon all of the circumstances of the case. We decline to adopt a talismanic concept in preference or addition to the commonsense, fact-specific approach to joint contraband possession.

Even if an "affirmative link" between defendant and the firearms was specifically required, however, we note that the record contains independent facts and circumstances, other than mere occupancy of the house, which permitted a reasonable inference that Smith had knowledge and control of the firearms. Five of the six weapons were in plain view in the house. *See Guiton, supra.* Four firearms were discovered in the master bedroom and bathroom: a Mossberg shotgun next to the bed and nightstand; a Revelation .20 gauge under the front of the bed; a Bauer .25 caliber in the dresser; and a Dan Wesson Arms in the master bathroom on top of the counter next to the sink. Agent Patterson testified that two other firearms, a .42 caliber handgun and a .22 caliber rifle, were found in the upstairs office area. One could reasonably infer that the firearms were all conveniently accessible to the defendant. This is particularly true in light of Officer Ellis's uncontradicted testimony that during the July 16 search, defendant's wife and son were found in the master bedroom, negating the likelihood that Randy Smith exercised exclusive dominion or control over this room. Thus, "affirmative link" or no, the evidence is sufficient to sustain appellant's conviction under a theory of joint constructive possession.

## IV.

Smith next alleges a pattern of prosecutorial misconduct which he says resulted in numerous trial errors.

## A.

Smith first claims that drug-related testimony should have been excluded as irrelevant under Fed.R.Evid. 402 or as unfairly prejudicial under Rule 403.

■ Evidence of drug dealing was undoubtedly relevant here. In this circuit the jury is permitted to view and consider the entire circumstances surrounding an alleged offense. Thus, in *United States v. Randall*, 887 F.2d 1262 (5th Cir.1989), the defendant was charged with carrying a firearm during *cocaine* trafficking. Yet, this Court held that evidence regarding *marijuana* dealing was admissible, because evidence which is "inextricably intertwined with ... evidence used to prove the crime charged is admissible so that the jury may evaluate all of the circumstances under which the defendant acted." *Id.* at 1268; *see also United States v. Sepulveda*, 710 F.2d 188, 189 (5th Cir.1983). In the present case, the district court first attempted to separate and exclude drug-related testimony. Ultimately realizing that this course distorted the jury's view of the offense [4], the court admitted the evidence. This decision did not run afoul of Rule 402.

■ Evidence that is relevant under Rule 402 may nevertheless be excluded if its probative value is substantially outweighed by its prejudicial effect. Fed.R. Evid. 403. Defendant asserts that the unusually inflammatory nature of the drug-related testimony here required its exclusion. However, a trial court's ruling on the admissibility of prejudicial evidence is re-

versed "[r]arely and only after a clear showing of prejudicial abuse of discretion." *United States v. Shaw*, 701 F.2d 367, 386 (5th Cir.1983), *cert. denied*, 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984); *see also Randall*, 887 F.2d at 1268. Any prejudice resulting from drug-related evidence in this case [5] was overcome by its intimate connection with the officers' motives for obtaining warrants for Smith and the premises. The evidence was necessary to inform the jury of the circumstances of Smith's offense. *See Randall*, 887 F.2d at 1268. Moreover, on at least three occasions, the district court instructed the jury on the limited use of this evidence and thus alleviated any unfair prejudice that might have resulted from its admission.

## B.

■ Smith next asserts that his right of confrontation was abridged when the district court, after admitting hearsay statements of Shyane Smith,[6] refused to permit defense counsel to impeach Mrs. Smith's credibility *during closing argument*. A hearsay declarant's credibility is subject to impeachment, *see United States v. Graham*, 858 F.2d 986, 990 (5th Cir.1988) (citing Fed.R.Evid. 806), *cert. denied*, 489 U.S. 1020, 109 S.Ct. 1140, 103 L.Ed.2d 201 (1989), but defendant apparently harbors the misconception that the sixth amendment affords him an unqualified right of impeachment.

■ The essential purpose of the confrontation clause is to secure for the opponent the *opportunity* of cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). It does not guarantee "cross-examination that is effective in whatever way, and to whatever

---

**4.** This is particularly true due to defense counsel's attempt to take advantage of the court's earlier refusal to admit this evidence by suggesting to the jury that the government had absolutely no reason to conduct the July 16 search. Probable cause for this search, however, derived from the odor of amphetamine outside the house.

**5.** The government offered three pieces of drug-related evidence at trial: (1) that officers detect-

ed the odor of phenylacetic acid, an amphetamine precursor, inside and outside the defendant's house; (2) that Officer Ellis had seen condenser tubes similar to those found in the defendant's house in an unrelated amphetamine laboratory in Fort Worth; and (3) that officers found amphetamine on Randy Smith's person during the July 16 search.

**6.** Defendant does not complain of the admission of the hearsay statements themselves.

extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (per curiam). Smith had ample opportunity at trial during his case-in-chief to impeach Shyane Smith by evidence of prior convictions, reputation, or prior inconsistent statements.[7] *See United States v. Moody*, 903 F.2d 321, 328 (5th Cir.1990). More to the point, defense counsel did not object on confrontation clause grounds to the hearsay testimony of Smith's estranged wife. The district court never prevented *all* inquiry into Shyane Smith's reputation for truthfulness; rather, it simply refused to allow defendant to conduct this inquiry during closing argument, when the prosecutor would have had no chance to rehabilitate the "witness." Trial judges are not without authority to prevent such methods of impeachment. On the contrary, they "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits" on cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). The district court's ruling in no way violated defendant's sixth amendment rights.

### C.

██ Smith next complains of the admission of testimony of Officer Ellis regarding his conversations with a realtor about an alleged lease for the 1105 Wood Heights residence. Never during Officer Ellis's direct examination did either he or the prosecutor mention a lease or any conversation with a leasing agent. On cross-examination, defense counsel questioned Officer Ellis about the existence of a lease. The prosecutor attempted to clarify this testimony with the following redirect colloquy:

Q. Were you able to have a conversation with [a real estate agent] regarding who [had leased the residence]?

A. Yes, I was.

Q. And who were you told verbally was on the lease?

A. She said that it was, according to the lease, ... "Harry Smith and spouse, Shyane Smith."

Defendant never objected to any of this testimony, and we have repeatedly held that absent a showing of manifest injustice, a defendant may not raise on appeal an objection that was not made at trial. *United States v. Mejia*, 844 F.2d 209 (5th Cir.1988); *United States v. Jackson*, 700 F.2d 181, 190 (5th Cir.), *cert. denied*, 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983). There is no manifest injustice here. To suggest that a defendant may freely ask damaging questions on cross-examination, without prodding from the prosecution, then fail to object to the prosecutor's redirect and then successfully complain on appeal under a manifest injustice standard is absurd. Defendant's invited admission of Officer Ellis's testimony on redirect does not warrant reversal.

### D.

██ Defendant also complains that the government's improper closing argument deprived him of a fair trial. The situation before us is not uncommon in criminal trials—defense counsel argues improperly, provoking the prosecutor to respond in kind. Two wrongs don't make a right, but a criminal conviction is not to be lightly overturned solely on the basis of the prosecutor's comments. Rather, the offending statements or conduct must be viewed in the context of both sides' argument. As the Supreme Court recently stated:

... if the prosecutor's remarks were "invited," and did no more than respond substantially in order to "right the scale," such comments would not warrant reversing a conviction.

*United States v. Young*, 470 U.S. 1, 14, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1 (1985).

During closing argument, Smith's counsel asserted that the facts and circum-

---

7. Indeed, defendant could have even called Shyane Smith, who had previously been sworn as a witness for the government, and cross-examined her with respect to her statements to Officer Ellis. *See* Fed.R.Evid. 806 ("[i]f the par-

ty against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination").

stances of this offense were really matters of local concern and not serious enough to constitute a "federal case." In response, the prosecutor remarked: "this is a federal case.... and in a federal case that means we've got a grand jury who has passed on the fact and said there's some federal law that we believe may have been violated." Responding to defense counsel's objection, the court cautioned the jury that an indictment is not evidence of guilt. The prosecutor then continued, "and once that happens, we come in and we present the case, a federal case to a federal jury.... so that [you] can decide which of our federal laws are going to be enforced."

The prosecutor mischaracterized the jury's role. Considered in the context of defendant's opening remarks, however, we are convinced that the prosecutor's argument did not undermine the fairness of the trial. Defendant's reliance on *United States v. Miranda*, 593 F.2d 590 (5th Cir. 1979), is misplaced. In that case, the prosecutor informed the jury that another jury had previously convicted a co-defendant with substantially less evidence than that against the defendant. *Id.* at 593–94. The prosecutor essentially told the jury that the one question they were to decide had already been decided. In contrast, the prosecutor's statements here merely cautioned the jury that their function was not to decide whether Smith's case was too insignificant to prosecute under federal law. Taken in context and in their entirety, the prosecutor's comments do not rise to the level of those condemned in *Miranda.*

### V.

Smith's remaining contention is that the district court improperly enhanced his sentence. The penalty for violating 18 U.S.C. § 922(g), possession of a firearm by a convicted felon, is imprisonment for not more than five years. Section 924(e)(1), however, establishes a minimum fifteen-year sentence for violations of § 922(g) by those who have three prior "dangerous felony"

or "serious drug offense" convictions. Because Smith's indictment alleged three prior convictions—two for manufacture of a controlled substance and one for burglary of a habitation—he received the enhanced sentence.

■ Smith contends that because the government included the prior convictions in his indictment, it was obliged to offer proof of them to the jury. This argument is frivolous. It is unnecessary for the jury to make any determination regarding prior convictions for enhancement purposes since this is not an element of an offense under section 922(g). *United States v. Affleck,* 861 F.2d 97, 99 (5th Cir.1988), *cert. denied,* 489 U.S. 1058, 109 S.Ct. 1325, 103 L.Ed.2d 593 (1989). Including such convictions in an indictment does not change this conclusion, for "[s]urplusage in an indictment may generally be disregarded where the charge is not materially broadened and the accused is not misled." *United States v. Quintero,* 872 F.2d 107, 111 (5th Cir.1989). Smith was not misled here. In fact, the government laudably notified Smith in a separate paragraph of the indictment which three convictions it asserted for enhancement purposes. To alleviate possible jury prejudice, however, that paragraph was redacted from the copy of the indictment they received during deliberation.[8]

■ Smith also argues that the evidence of prior convictions before the sentencing court was insufficient to sustain a finding that those convictions qualified as "serious drug offense[s]" within the meaning of § 924(e). A predicate offense under that section includes "an offense under State law involving manufacturing ... *a controlled substance (as defined by § 102 of the Controlled Substances Act (21 U.S.C. § 802)) ....*" 18 U.S.C. § 924(e)(2)(A) (emphasis added). Defendant concedes that he was twice convicted under Texas law of manufacturing a "controlled substance," but he argues that § 924(e) cannot apply because the controlled substance for one of these convic-

---

**8.** This course of conduct comports with our holding in *Quintero* that evidence of predicate offenses for purposes of sentence enhancement

is irrelevant at trial, and possibly prejudicial, and therefore should never be presented to the jury. 872 F.2d at 111.

tions was not identified in the presentence report or at the sentencing hearing.[9] This contention is also meritless.

Sentencing courts do not operate under "constitutionally imposed burdens of proof." *McMillan v. Pennsylvania*, 477 U.S. 79, 92 n. 8, 106 S.Ct. 2411, 2419 n. 8, 91 L.Ed.2d 67 (1986). Far from requiring proof of sentencing factors beyond a reasonable doubt, *United States v. McGatha*, 891 F.2d 1520 (5th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 2188, 109 L.Ed.2d 516 (1990), the federal sentencing guidelines standard mandates only "sufficient indicia of reliability to support probable accuracy." U.S.S.G. § 1B1.3. The Texas law definition of a "controlled substance" for which Smith admits a prior conviction is almost identical to that in 21 U.S.C. § 802. *Compare* Tex. Health & Safety Code Ann. § 481.002 *et seq.* (Vernon 1991) *with* 21 U.S.C. § 802 *et seq.* Indeed, the state statute probably derived from the federal statute. Both statutes identify more than two hundred chemicals as controlled substances. Accordingly, although the controlled substance that Smith manufactured was not specifically identified at the sentencing hearing, we take judicial notice that his state law conviction constitutes a "serious drug offense" under § 924(e)(2)(A). In any event, Smith did not object at sentencing to the lack of proof of the substance.

## VI.

For the foregoing reasons, the district court's judgment of conviction and sentence is AFFIRMED.

---

**9.** Defendant admits that the government established at the sentencing hearing that the con- trolled substance for his other conviction was amphetamine.