02-10-439-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00439-CR

 

 


 
 
 Joseph Edwin Wilson
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 78th
District Court OF Wichita COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

Introduction

          In
five points, Appellant Joseph Edwin Wilson appeals his conviction and sentence
for possession of anhydrous ammonia with intent to manufacture a controlled
substance.  In points one and two, he contests the sufficiency of the evidence;
in point three, he complains about an instruction included in the court’s
charge; in point four, he asserts that his counsel was ineffective; and in
point five, he claims that there exists a “fatal variance” between the evidence
presented at trial and the enhancement allegation to which he pled true.  We
affirm.

Background
Facts and Procedural History

          A
search warrant executed at a Wichita County house where Appellant and a
companion were roused one morning netted materials commonly used in the illicit
production, delivery, and consumption of methamphetamine.  Among the seized
materials was an aqueous solution officers extracted from a plastic water
cooler in a shed behind the house.  A sample of the solution was sent to the
Department of Public Safety laboratory in Abilene where chemical analysis showed
that it contained ammonia.  The State charged Appellant with possession of
anhydrous ammonia with intent to manufacture methamphetamine, a jury found him guilty,
he pled true to an enhancement allegation, and the trial court sentenced him to
thirty-five years’ confinement.

Sufficiency
of the Evidence

          In
his first two points, Appellant challenges the sufficiency of the evidence to
support his conviction.  We review challenges to the sufficiency of the
evidence by viewing all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Isassi v.
State, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

          The
jury found Appellant guilty of possessing certain chemicals with intent to
manufacture a controlled substance.  The health and safety code makes it an offense
for a person, with intent to unlawfully manufacture a controlled substance, to
possess anhydrous ammonia.  Tex. Health & Safety Code Ann. § 481.124(a)(1)
(West 2010).

          Two
presumptions from the health and safety code apply in this case.  The first, at
issue in Appellant’s third point, addressed below, is that intent to unlawfully
manufacture the controlled substance methamphetamine is presumed if the person
possesses anhydrous ammonia in a container or receptacle that is not designed
and manufactured to lawfully hold or transport anhydrous ammonia.  Id. § 481.124(b). 
The second, at issue in Appellant’s first point, is that a substance is
presumed to be anhydrous ammonia if it is in a container or receptacle that is
not designed and manufactured to lawfully hold or transport anhydrous ammonia,
if a properly administered field test of the substance using a testing device
or instrument designed and manufactured for that purpose produces a positive
result for anhydrous ammonia, or if a laboratory test of a water solution of
the substance produces a positive result for ammonia.  Id. § 481.124(c)(2).

          Appellant
contends in his first point that the evidence is insufficient to show that the
substance seized from a shed in the backyard was anhydrous ammonia because the
jury was not instructed on the applicable presumption.  He concedes that
laboratory testing of a water solution of the substance taken from a water
cooler in the backyard yielded ammonia.  But he argues that the evidence
nonetheless is insufficient because the jury was not instructed to presume that
the substance was anhydrous ammonia if it found that the above requirements
of the presumption were met, that is, that the substance was found in an
unapproved container and that a laboratory test of a water solution of the
substance produced a positive result for ammonia.  In other words, Appellant
argues that although the evidence supports the presumption, because the jury
was not told to make it, the evidence is insufficient.  We disagree.

          Sufficiency
of the evidence is measured by the elements of the offense as defined by the
hypothetically correct jury charge for the case, not the charge actually
given.  Byrd v. State, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011);
Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  A hypothetically
correct jury charge accurately sets out the law, is authorized by the
indictment, does not unnecessarily restrict the State=s
theories of liability, and adequately describes the particular offense for
which the defendant was tried.  Byrd, 336 S.W.3d at 246; Malik,
953 S.W.2d at 240.

          As
discussed relative to Appellant’s third point below, the jury charge included
half of the presumptions germane to this case.  A hypothetically correct charge
would have included both.  That is, it would have instructed the jury that it
could presume the substance at issue was anhydrous ammonia because, as
Appellant concedes, that presumption is supported by evidence that laboratory
testing of a water solution of a substance seized from an unapproved container produced
a positive result for ammonia.  See Tex. Health & Safety Code Ann. § 481.124(c)(2);
Scott v. State, 253 S.W.3d 736, 746 (Tex. App.—Amarillo 2007, pet. ref’d).

          Because
the evidence is undisputed that an aqueous solution of the substance seized
from a water cooler, which is not an approved container, tested positive for
ammonia, and that such a result leads to the presumption that the substance is anhydrous
ammonia, we hold that the evidence is sufficient under a hypothetically correct
charge to support a reasonable juror’s belief beyond a reasonable doubt that
the seized substance was anhydrous ammonia.  We overrule Appellant’s first
point.

          In
his second point Appellant contends that the evidence is insufficient to link
him to the anhydrous ammonia found in the shed behind the house he occupied.  Although
anhydrous ammonia is not an unlawful substance per se, as we have said, it is unlawful
if possessed with the intent to unlawfully manufacture a controlled substance.  See
Tex. Health & Safety Code Ann. § 481.124(a)(1).

          When
it is possessed with the requisite intent, then we treat anhydrous ammonia as a
controlled substance, and the law pertaining to the possession of controlled
substances is, therefore, useful to our analysis.  See Wootton v. State,
132 S.W.3d 80, 86 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d).  To prove
unlawful possession of a controlled substance, the State must show that the
accused:  (1) exercised control, management, or care over the substance; and
(2) knew the matter possessed was contraband.  Poindexter v. State, 153
S.W.3d 402, 405 (Tex. Crim. App. 2005); Joseph v. State, 897 S.W.2d 374,
376 (Tex. Crim. App. 1995); see Tex. Health & Safety Code Ann. §
481.002(38).  Whether this evidence is direct or circumstantial, it must establish,
to the requisite level of confidence, that the accused’s connection with the contraband
was more than just fortuitous.  Poindexter, 153 S.W.3d at 405–06; Brown
v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).  This is the whole of
what formerly was known as the “affirmative-links rule.”  Poindexter,
153 S.W.3d at 405–06; Brown, 911 S.W.2d at 747.  The court of criminal
appeals has recognized, however, that the word “affirmative” adds nothing to
the plain meaning of “link” and has dropped it when assessing the sufficiency
of circumstantial evidence to show possession.  See Evans v. State, 202
S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006).

          The
rule is designed to protect the innocent bystander from conviction based solely
upon his fortuitous proximity to someone else’s contraband.  Poindexter,
153 S.W.3d at 406; see United States v. Phillips, 496 F.2d 1395, 1397
(5th Cir. 1974) (“Proof of mere proximity to contraband is not sufficient to
establish actual constructive possession or the element of knowledge.”), cert.
denied, 422 U.S. 1056 (1975).  The rule simply restates the common-sense
notion that a person—such as a father, son, spouse, roommate, or friend—may
jointly possess property like a house but not necessarily jointly possess the
contraband found in that house.  Poindexter, 153 S.W.3d at 406 (citing United
States v. Smith, 930 F.2d 1081, 1086–87 (5th Cir. 1991)).  Thus, the court
of criminal appeals has formulated the rule that when a person is not in
exclusive possession of the place where a controlled substance is found, it
cannot be concluded that he had knowledge of and control over the contraband
unless there are additional independent facts and circumstances linking him to
it.  See Poindexter, 153 S.W.3d at 406; Deshong v. State, 625 S.W.2d
327, 329 (Tex. Crim. App. 1981).

          The
record shows that another person was present in the house with Appellant and as
close to the anhydrous ammonia as Appellant was when the warrant was executed. 
Under these circumstances, it was the State’s burden to show additional
independent facts and circumstances linking Appellant to the anhydrous ammonia seized
from the shed.  See Poindexter, 153 S.W.3d at 406; Martin v. State,
753 S.W.2d 384, 387 (Tex. Crim. App. 1988); Deshong, 625 S.W.2d at 329.

          Factors
that may link an accused to contraband include whether (1) the accused was
present when the search was conducted; (2) the contraband was in plain view;
(3) the accused was in close proximity to and had access to the contraband; (4)
the accused was under the influence of narcotics when arrested; (5) the accused
possessed other contraband or narcotics when arrested; (6) the accused made
incriminating statements when arrested; (7) the accused attempted to flee; (8)
the accused made furtive gestures; (9) there was an odor of contraband; (10)
other contraband or drug paraphernalia were present; (11) the accused owned or
had the right to possess the place where the drugs were found; (12) the place
where the drugs were found was enclosed; (13) the accused was found with a
large amount of cash; and (14) the conduct of the accused indicated a
consciousness of guilt.  Evans, 202 S.W.3d at 162 n.12; Isbell v.
State, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.).  No set
formula exists to dictate a finding of sufficient links to support an inference
of knowing possession of contraband.  Isbell, 246 S.W.3d at 238; Taylor
v. State, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).  The number
of factors present is not as important as the logical force or the degree to
which the factors, alone or in combination, tend to link the defendant to the
contraband.  Isbell, 246 S.W.3d at 238; Bates v. State, 155
S.W.3d 212, 216–17 (Tex. App.—Dallas 2004, no pet.); see Evans, 202
S.W.3d at 162.

          Applying
these factors to the evidence in the record reveals that most of them favor the
verdict.  Appellant was present when the officers conducted the search—Wichita County
District Attorney’s Office Investigator Bobby Dilbeck testified that Appellant
was in the master bedroom when the warrant was executed.  Although the
anhydrous ammonia was not in plain view—it was in a plastic container in a shed
behind the house—it was nearby, and Appellant had access to it—he merely had to
step out the back door, cross a short distance of backyard, and enter the shed.

          There
is no evidence that Appellant was under the influence of narcotics when he was arrested,
that he attempted to flee, that he made any furtive gestures, or that he was
found with a large amount of cash.  But there is evidence that he possessed
other contraband and narcotics at the time.

          Numerous
items and materials commonly used in the production of methamphetamine were
found throughout the property.  A trash bag containing salt and a wet paper
filter through which someone had recently poured ether from a punched can were
found in the garage.  A can of Coleman camp fuel used as solvent, a can of
lacquer thinner for cleaning up, and a food grinder used for grinding
pseudoephedrine pills were found in a nonfunctional truck parked in the
driveway.  In the bed of the truck, the officer discovered a homemade hydrogen
chloride gas generator made from a pop bottle.  Lithium batteries in varying
degrees of denuding—peeled to allow extraction of the internal lithium strips
that serve as catalysts for the chemical reactions necessary to methamphetamine
production—were found throughout the house.

          There
was a powerful chemical odor of ammonia and ether throughout the house.  Officers
found a spray bottle of odor eliminator on Appellant’s bedside table.  Someone
had written on the spray bottle in black marker, “Wilson’s holy water.”  Drug
paraphernalia, too, was present in the house—glass smoking pipes,
methamphetamine residue, digital scales, and straws for ingesting
methamphetamine were found in the kitchen and master bedroom.  In addition, small
baggies containing a white powdery substance suspected to be methamphetamine
were found in the kitchen and dining room and in a drawer beside the bed in the
master bedroom.  Appellant admitted that methamphetamine found in a purse in
the kitchen-dining area belonged to him.

          It
is undisputed that Appellant owned or had the right to possess the place where
the contraband was found.  The search was executed at 1330 Pecanway Drive
around five o’clock in the morning.  Officers found Appellant in bed in the
master bedroom.  The clerk’s record contains Appellant’s request for court
appointed counsel, upon which he listed his address as 1330 Pecanway Drive.  Although
this document was not admitted in evidence, there is merit to the State’s
argument that given its presence in the court’s file, it may have been futile for
Appellant to dispute that he lived there.  Further, Appellant’s counsel argued
at closing, “Why would somebody make methamphetamine somewhere else and then
bring all the trash to their own house to smell up the place?”

          The
place where the anhydrous ammonia was found was enclosed—it was found in an orange
and white plastic water cooler inside a shed directly behind the house and within
the fence that surrounded the house.  Finally, Appellant’s conduct indicated a
consciousness of guilt—he claimed ownership of methamphetamine seized from a
purse found in the house.

          Considering
all these factors, we hold that their cumulative logical force would support a
rational juror’s belief beyond a reasonable doubt that Appellant knowingly
possessed anhydrous ammonia with intent to manufacture methamphetamine.  See
Poindexter, 153 S.W.3d at 405–06; Brown, 911 S.W.2d at 747; Scott,
253 S.W.3d at 746; Wootton, 132 S.W.3d at 90.  Accordingly, we overrule
Appellant’s second point.

Jury
charge

          In
his third point, Appellant contends that the trial court erred and caused him
egregious harm by including the following paragraph, numbered 16, in the jury
charge:  “An intent to unlawfully manufacture the controlled substance,
methamphetamine[,] is presumed if the actor possesses anhydrous ammonia in a
container or receptacle that is not designed and manufactured to lawfully hold
or transport anhydrous ammonia.”

          We
review claims of egregiously harmful jury-charge error by first deciding
whether the complained-of portion of the charge is, in fact, erroneous.  See
Abdnor v. State, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994).  If there
is no error, our inquiry ends.  See id.; see also Sakil v. State,
287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).  If, on the other hand, there is
error in the charge, we then must decide whether the error caused the
complaining party egregious harm.  Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985) (op. on reh=g);
see Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); Hutch v. State,
922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

          Appellant
argues that the trial court erred by including paragraph 16 in the charge because
the State did not present expert testimony on “the design and manufacture of
anhydrous ammonia containers,” the standards for approved containers, and how
the container at issue in this case was substandard.  He argues that he was
egregiously harmed for the same reason.

          The
State responds that it presented expert testimony that established that the
plastic water cooler from which the anhydrous ammonia solution was seized was
not designed and manufactured to lawfully hold anhydrous ammonia.  We agree.

          Under
section 2.05 of the penal code, a trial court must submit the issue of the
existence of a presumed fact to the jury if there is sufficient evidence of the
facts that give rise to the presumption.  Tex. Penal Code Ann. § 2.05(a)(1)
(West 2011).  In this case, Investigator Dilbeck, an officer with nearly thirty
years experience investigating narcotics crimes, testified that due to its
highly corrosive nature, anhydrous ammonia had to be kept in an approved
container and that approved containers are made of metal, not plastic.  He
noted that the container in which he found the anhydrous ammonia in this case
was made of plastic and that it had no markings to indicate that it was
approved to hold anhydrous ammonia, and that, in fact, it appeared to be a
water cooler that one would find on the sidelines of a high school football
game filled with Gatorade.  When specifically asked whether the container was
approved to hold anhydrous ammonia, he testified, “Definitely not.”  He further
testified that the container would present a safety hazard if anhydrous ammonia
were allowed to stay stored inside it.  We hold that this evidence is
sufficient to support the trial court’s including the presumption instruction
in the charge, and we overrule Appellant’s third point.

Date
of Prior Conviction and Effectiveness of Counsel

          In
his fifth point, Appellant contends that, between the allegations in the
enhancement paragraph and the State’s evidence, there is a fatal variance that he
did not waive by pleading true that entitles him to a new punishment hearing.  In
his fourth point, he claims that his counsel was ineffective for letting
Appellant plead true to the enhancement allegation.

          The
State alleged in the enhancement paragraph of the indictment that Appellant was
previously convicted for a felony drug offense, possession of methamphetamine, on
January 24, 2003.  Appellant pled true to the enhancement allegation, and the evidence
showed that he was placed on probation on January 24, 2003, and that his
probation was revoked on May 27, 2005.  After hearing the evidence and the
arguments of counsel, the trial court found the enhancement allegation true and
sentenced Appellant to thirty-five years’ confinement.

          Appellant
cites no cases but invokes a rule that the State cannot use a prior conviction
to enhance a subsequent offense until the prior conviction becomes “final.”  For
enhancement by prior conviction, the State is required to allege and prove that
the defendant was previously convicted and that the conviction became final
before the primary offense was committed.  Diremiggio v. State, 637
S.W.2d 926, 928 (Tex. Crim. App. [Panel Op.] 1982).  If the defendant is placed
on community supervision, there is no final conviction for purposes of
enhancement of punishment or habitual offender treatment until the community
supervision is revoked.  Ex parte Langley, 833 S.W.2d 141, 143 (Tex.
Crim. App. 1992); Ex parte Murchison, 560 S.W.2d 654, 656 (Tex. Crim.
App. 1978).  Commentators have noted that if the defendant was given community
supervision but community supervision was revoked before commission of the
primary offense, the case is regarded as though a prison sentence had been
given initially.  43A George E. Dix & John M. Schmolesky, Texas Practice: 
Criminal Practice & Procedure § 46.91 (3d ed. 2011).  Therefore,
the conviction is not rendered nonfinal because community supervision had been
granted.  Id.  The date of finality of the conviction is the date of
community supervision revocation.  Capuchino v. State, 389 S.W.2d 296,
299 (Tex. Crim. App. 1965) cert. denied, 386 U.S. 928 (1967).

          Prior
convictions used as enhancements must be pled in some form, but they need not
be pled in the indictment.  Brooks v. State, 957 S.W.2d 30, 34 (Tex. Crim.
App. 1997); Smith v. State, No. 02-07-00267-CR, 2008 WL 1777866, at *1
(Tex. App.—Fort Worth Apr. 17, 2008, no pet.) (mem. op., not designated for
publication).  The accused is entitled to a description of the judgment of
former conviction that will enable him to find the record and make preparation
for a trial on the question of whether he is the convict named in the judgment.
 Villescas v. State, 189 S.W.3d 290, 293 (Tex. Crim. App. 2006) (quoting
Hollins v. State, 571 S.W.2d 873, 875 (Tex. Crim. App. 1978)).

          It
is not necessary to allege prior convictions for the purpose of enhancement
with the same particularity that must be used in charging on the primary
offense.  Freda v. State, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986).  Variances
between an enhancement allegation and the proof in regard to cause numbers,
courts, and dates of conviction have all been held to be immaterial.  See
Rooks v. State, 576 S.W.2d 615, 616–17 (Tex. Crim. App. 1978) (affirming
when the indictment alleged a prior conviction in the “Criminal District Court
of Harris County” and the proof showed that the conviction originated in the
“184th District Court of Harris County”); Thompson v. State, 563 S.W.2d
247, 251 (Tex. Crim. App. [Panel Op.] 1978) (holding two-day variance between
date of prior conviction as alleged in indictment and as proved by evidence was
immaterial); Bray v. State, 531 S.W.2d 633, 635 (Tex. Crim. App. 1976) (noting
that clerical error in the number of the district court did not render proof of
prior conviction at variance with allegations in indictment).

          Moreover,
neither the indictment nor the charge must allege or recite the dates of
conviction as long as the allegations are specific enough to apprise the
defendant of the conviction being used against him and as long as the proof at
the trial shows the necessary succession of offenses and final convictions.  Hernandez
v. State, 530 S.W.2d 563, 568 (Tex. Crim. App. 1975).

          Here, the
record indicates that the indictment correctly alleged the cause number of the
prior offense, the convicting court and its location, the name of the offense,
and the fact that the offense was a felony.  Appellant does not contend that he
did not have actual pretrial notice of the conviction the State intended to
use, including the true date it was issued, or that he was surprised, misled, unable
to prepare his defense, or otherwise harmed.

          Because
the State was not required to allege the dates of the prior
punishment-enhancing conviction in the indictment, whether the State alleged
the date the conviction became final for enhancement purposes or the date the
original judgment was entered is immaterial.  Thus, whatever variance existed between
the enhancement allegation and the proof was not fatal, and the evidence is
sufficient to support the finding of true.  See Thompson, 563 S.W.2d at 250–51;
Benton v. State, 770 S.W.2d 946, 947–48 (Tex. App.—Houston [1st Dist.]
1989, pet. ref’d).  Accordingly, we overrule Appellant’s fifth point.  And
because any variance between the date alleged in the indictment and the proof
at trial was immaterial, we further hold that Appellant’s counsel was not
ineffective for failing to object to it, and we overrule Appellant’s fourth
point.  See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct.
2052, 2064 (1984); Davis v. State, 278 S.W.3d 346, 352 (Tex. Crim. App.
2009).

Conclusion

          Having
overruled all of Appellant’s points, we affirm the trial court’s judgment.

 

 

LEE GABRIEL
JUSTICE

 

PANEL: 
WALKER,
McCOY, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 1, 2012









[1]See Tex. R. App. P. 47.4.