NO. 07-06-0163-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

NOVEMBER 15, 2007
_____

GEORGE W. SCOTT, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2004-407,601; HONORABLE JIM BOB DARNELL, JUDGE PRESIDING
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**OPINION**

Appellant George W. Scott appeals his conviction by a jury of the offense of possession of anhydrous ammonia with the intent to manufacture methamphetamine and his sentence of fifteen years confinement. We will affirm.

Factual and Procedural Background

On October 8, 2004, Trooper Jerry Johnson of the Texas Department of Public Safety stopped a 1982 Chevrolet pickup in Lubbock County driven by Kimberly Berryhill,

because he suspected a possible DWI violation. Approaching the vehicle, he first spoke with Berryhill. Johnson determined that she was not intoxicated but her nervous behavior raised his suspicion about other possible criminal conduct. Johnson asked Berryhill for consent to search the pickup. At this point, Johnson encountered appellant, who was the only other occupant of the pickup.

Johnson testified that when he began searching the passenger side of the vehicle he smelled an odor that he recognized as that of ammonia. Looking for the ammonia, he then searched the pickup bed, including a mounted toolbox located immediately behind the pickup cab. According to Johnson, "a cloud of fumes" came from the toolbox when he lifted its lid. Holding his breath he looked into the toolbox and observed what he described as a propane tank with a brass fitting connected to a plastic tube. Johnson stated that he thought the apparatus was "consistent with when they extract the anhydrous out of tanks." He opined the tank was leaking because oxidation of the brass valve causes a change of color.

Because of the apparent leak in the tank, Johnson contacted DPS Narcotics Services to collect the tank. Tommy Salmon, a DPS narcotics officer, secured the tank. He testified it was not an approved tank for the storage or transportation of anhydrous ammonia. The tank was field tested with a Drager pump system, which is used to detect the presence of ammonia. The tank tested positive for ammonia. Appellant and Berryhill were arrested. In the course of trial testimony, DPS chemist Scott Williams opined the tank contained anhydrous ammonia.

At trial, Johnson testified that the license plate on the pickup at the time of the stop matched a 1979 Chevrolet Camero. Johnson had difficulty locating the vehicle identification number because the door post sticker and dash plate were missing. He finally located the number on a sticker in the glove box. A DPS records check revealed the pickup was registered to Doyle Russell. When contacted by DPS, Russell reported he sold the vehicle to a used car dealership. There was evidence that the vehicle then passed to the hands of appellant's father, George Scott, Sr. Evidence also showed that appellant lived with his father at an address in Lubbock.

Jimmy Lee Hale, a friend of appellant, testified for appellant. He said he purchased the pickup as a "parts truck" and last saw it in August 2004 before he began a term of incarceration in a county jail. Hale was still in jail when appellant and Berryhill were arrested. According to Hale, during a jail visit by his ex-wife, he instructed her to have appellant sell the pickup and place the proceeds in his inmate trust account. Hale acknowledged the license plate on the pickup was from a Camero he owned. He had no explanation for the transfer. Hale said he used the address of Scott's father for receipt of mail but resided elsewhere.

Appellant was charged by indictment with the knowing and intentional possession of anhydrous ammonia with the intent to manufacture methamphetamine, in violation of section 481.124 of the Texas Controlled Substances Act. Tex. Health & Safety Code Ann.

§ 481.124 (Vernon 2003).[1]  A jury convicted appellant of the indicted offense and this appeal followed.

Through six issues, appellant contends the trial court erred by permitting the State to amend the indictment at trial over his objection; the court committed charge error resulting in egregious harm to appellant; and the evidence he intentionally and knowingly possessed anhydrous ammonia with intent to manufacture methamphetamine was legally and factually insufficient to support his conviction.

Issues One and Two - Amendment of Indictment

Appellant's first and second issues assign error to what he describes as the trial court's permitting the State to amend the indictment to delete the essential mental states of "intentionally" and "knowingly."  By his first issue, appellant contends the amendment to the indictment contravened article 28.10 of the Code of Criminal Procedure.[2]  By his second issue, he argues the amendment effectively reduced the State's burden to prove beyond a reasonable doubt every essential element of the offense, in violation of his due process[3] rights and of section 2.01 of the Penal Code.[4]  Because we disagree with

---

[1]  We hereinafter cite this section by the shorthand reference "section 481.124."

[2] Tex. Code Crim. Proc. Ann. art. 28.10 (Vernon 2006).

[3]  U.S. Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law....").

[4] Tex. Penal Code Ann. § 2.01 (Vernon 2003).

appellant's characterization of the trial court's action as an amendment of the indictment, we overrule the issues.

As noted, appellant was charged with and convicted of the second-degree felony offense of possession of anhydrous ammonia with intent to manufacture a controlled substance in violation of section 481.124(a). As relevant to this case, under that statute, a person commits an offense if, with intent to unlawfully manufacture a controlled substance, the person possesses or transports anhydrous ammonia. *See* section 481.124(a).

Appellant's indictment read as follows:

> In Lubbock County, Texas, GEORGE SCOTT, hereinafter styled the Defendant, heretofore on or about the 8th day of October, A.D. 2004, did *intentionally and knowingly* possess anhydrous ammonia with intent to unlawfully manufacture a controlled substance, to-wit: Methamphetamine; AGAINST THE PEACE AND DIGNITY OF THE STATE. (emphasis added)**.**

On the second day of trial, during the State's case, the State asked to "abandon" the indictment's allegations of "intentionally and knowingly" as they pertained to the element of possession. The State argued the allegations were not required by the statute, but were mere surplusage. The State concluded by asking that the words "intentionally and knowingly" not be put in the court's charge to the jury. The defense objected, contending the language was not surplusage. Stating its opinion that "intent is alleged with regard to possession with intent to unlawfully manufacture," the court granted the "request to delete" the words.

5

When the court's charge was presented to the jury, the application paragraph read, in relevant part, as follows:

> Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about October 8, 2004, in Lubbock County, Texas, the defendant, GEORGE SCOTT, . . . , did then and there possess anhydrous ammonia with intent to unlawfully manufacture a controlled substance, to-wit: Methamphetamine, then you will find the defendant guilty of the offense of possession of certain chemicals with intent to manufacture a controlled substance, namely, Methamphetamine; . . . .

The record does not reflect the indictment was altered. Assuming the State's request amounted to a motion to amend the indictment, neither such a motion by the State, nor the trial court's granting of the motion, constitute amendment of an indictment. *Ward v. State,* 829 S.W.2d 787, 793 (Tex.Crim.App. 1992), *overruled in part*, *Riney v. State*, 28 S.W.3d 561, 566 (Tex.Crim.App. 2000) (overruling *Ward* to the extent it required physical interlineation of the original indictment as the only means to accomplish an amendment). An amendment is effectuated either by the physical alteration of the original indictment itself, or by the incorporation into the record of a new document to serve as the "official" indictment. *Ward*, 829 S.W.2d at 793; *Riney*, 28 S.W.3d at 565-66. Because the indictment in this case was never physically altered, nor was an altered indictment substituted, there was no amendment and the original unmodified indictment remained in full force and effect. *See Ward*, 829 S.W.2d at 795.

6

Issues Five and Six - Charge Error

We next turn to appellant's issues five and six, asserting jury charge error. By his fifth issue, appellant contends the court erred by omitting from the charge language requiring the jury to find he intentionally and knowingly possessed anhydrous ammonia, and by his sixth issue, argues the court's charge impermissibly converted the offense into a strict liability crime while shifting to him the burden to prove he lacked intent to manufacture methamphetamine. Because of the factual interrelationship of all appellant's issues, we necessarily consider here some of the arguments appellant made in support of his first two issues.

Appellant argues section 481.124(a) requires proof that his possession of anhydrous ammonia was accompanied by a culpable mental state. The State responds that the culpable mental state required by the statute's express terms is the intent to manufacture methamphetamine. From that statutory language, it argues no additional mental state need be shown with respect to the defendant's possession.

The State further argues that a knowing mental state necessarily is encompassed within the intent to manufacture methamphetamine because it is not possible for a defendant to possess an ingredient of methamphetamine unknowingly yet possess it with the intent to manufacture the controlled substance. The difficulty with this position is section 481.124(b)(1) permits the jury to presume the defendant had the intent to manufacture the controlled substance if it finds he possessed anhydrous ammonia in a container not designed or manufactured for that purpose. If the State is not required to

prove that the defendant's possession was at least reckless, a conviction under this statute may occur without any evidence at all of a culpable mental state accompanying the defendant's actions.

The absence of language in section 481.124(a) specifying a culpable mental state as to the element of possession does not establish that the legislature intended to dispense with a culpable mental state. *See* Tex. Penal Code Ann. § 6.02(b) (Vernon 2003) (stating that if the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition "plainly dispenses" with any mental element); *Aguirre v. State,* 22 S.W.3d 463, 470-77 (Tex.Crim.App. 1999) (construing § 6.02(b) and setting forth factors to be reviewed in determining whether or not a statute plainly dispenses with a mental state element). The court in *Wootton v. State,* 132 S.W.3d 80, 86 (Tex.App.–Houston [14th Dist.] 2004, pet. ref'd) found that the possession of anhydrous ammonia under section 481.124(a) must be accompanied by a culpable mental state. We agree, and find that because section 481.124(a) does not specify a culpable mental state as to the element of possession, section 6.02(c) of the Penal Code requires that the mental state amount to at least recklessness. *Aguirre*, 22 S.W.3d at 472; *Wootton,* 132 S.W.3d at 86.

Because we conclude guilt under the statute requires proof appellant's possession of anhydrous ammonia was accompanied by a culpable mental state, the court erred by failing to charge the jury on possession of ammonia with the culpable mental states alleged by the indictment; *viz.*, intentionally and knowingly. *See Dinkins v. State,* 894 S.W.2d 330,

8

339 (Tex.Crim.App. 1995), *cert. denied,* 516 U.S. 832, 116 S. Ct. 106, 133 L. Ed. 2d 59 (1995) ("the charge must contain an accurate statement of the law and must set out all the essential elements of the offense."). *See also Reed v. State*, 117 S.W.3d 260, 265 (Tex.Crim.App. 2003) (when not referring to lesser included offense, inclusion in charge of recklessness as culpable mental state is error when indictment alleged only intentional and knowing conduct).

Having found error in the charge, we now consider whether harm resulted. Because appellant did not object to the omission of intentionally and knowingly from the application paragraph of the charge, we reverse the judgment only if the error caused appellant such "egregious harm" that it deprived him of a fair and impartial trial. *Martin v. State*, 200 S.W.3d 635, 639-40 (Tex.Crim.App. 2006); *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App. 1996); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985) (op. on reh'g). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State,* 218 S.W.3d 706, 719 (Tex.Crim.App. 2007). The record must show the defendant suffered actual, rather than merely theoretical, harm from the jury instruction error. *Almanza*, 686 S.W.2d at 174. Our review for egregious harm requires consideration of the entire charge, the evidence including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Stuhler,* 218 S.W.3d at 719. Evaluation of those factors convinces us that the defects in the charge did not cause appellant egregious harm.

9

We begin with the charge. In addition to the application paragraph, our review of the entire charge must include consideration of the definitions. Here, the charge contained the following:

> By the term 'possession' is meant the actual care, custody, control or management. Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control.

> A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession.

The charge's definition of possession is taken from section 481 of the Health and Safety Code.[5] The remaining language we have quoted is taken from section 6.01(a) and (b) of the Penal Code. Subsection (a) codifies the common law rule that a voluntary act or omission is a predicate to criminal responsibility. *See* Seth S. Searcy III & James R. Patterson, Vernon's Annotated Penal Code, § 6.01, *Practice Commentary*, p. 80 (West 1974). The provisions of section 6.01 focus on the *actus reus* requirement for criminal responsibility, while the mental state requirement is addressed in section 6.02. *Rogers v. State*, 105 S.W.3d 630, 637 (Tex.Crim.App. 2003).

Had the court's charge contained the "intentional and knowing" mental state requirement as to appellant's possession of the anhydrous ammonia, it would have contained the definition of knowing action from Penal Code section 6.03(b), which reads: "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or

---

[5] Tex. Health & Safety Code Ann. § 481.002(38) (Vernon 2003). The Penal Code contains the same definition. Tex. Penal Code Ann. § 1.07(a)(39) (Vernon Supp. 2007).

to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." Tex. Penal Code Ann. § 6.03(b) (Vernon 2003).

Under the charge as given, to find that appellant's possession of the ammonia was a voluntary act, the jury must have found he at least was "aware of his control" of it. The charge thus placed before the jury the requirement that the State prove appellant had an awareness of the ammonia in the vehicle. That the wording came from section 6.01(b) rather than section 6.03(b) does not show egregious harm to appellant.

The contested issues at trial and the arguments of counsel concerning those issues further support our conclusion that appellant did not suffer egregious harm from the court's charge error. After concluding that the possession of anhydrous ammonia must be accompanied by a culpable mental state to violate section 481.124, the court in *Wootton* found case law construing the definition of possession in the context of knowing or intentional possession of a controlled substance to be "instructive" in its analysis of the issue before it. 132 S.W.3d at 86. As the court there noted, to establish the unlawful possession of a controlled substance, the State must show that the defendant (1) exercised actual care, control or custody over the substance, and (2) was conscious of his connection with it and knew what it was. *Id.*, *citing Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995).[6] When, like here, a defendant is not in sole control of the place

---

[6] Although we need not go so far here, a panel of this court cited *Wootton*, 132 S.W.3d at 86, for the proposition that the evidentiary standard applicable to the element of the defendant's possession of anhydrous ammonia in a prosecution under section 481.124 is "the same" as that applicable to possession of a controlled substance. *Hayes*

11

where contraband is found, his knowing possession of the contraband typically is evaluated through a links analysis, by which the State must demonstrate that the defendant's connection with the contraband was not merely fortuitous. *Wootton*, 132 S.W.3d at 86; *see Evans v. State*, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006) (applying analysis). We will discuss the evidence in more detail under our analysis of appellant's third and fourth issues, but for present purposes we note simply that the case was tried like a controlled substance possession case. The State emphasized the evidence showing appellant's connection with the pickup, the ammonia odor that was present, the location of the tank behind the passenger side of the pickup, and his tools in the pickup to link appellant with the ammonia. The defense attempted to discount the same factors.

During voir dire, the State and appellant discussed the State's burden to prove, *inter alia*, appellant intentionally and knowingly possessed anhydrous ammonia. The prosecutor explained for the veniremen the State must prove appellant intentionally and knowingly possessed anhydrous ammonia. Panel members expressed understanding of the terms in conjunction with the State's burden of proof.

The indictment, read in open court before the jury, averred appellant "intentionally and knowingly" possessed the anhydrous ammonia.

---

*v. State*, 2005 WL 1865541 (Tex.App.–Amarillo, August 8, 2005, pet. ref'd) (memo. op.) (not designated for publication). *See also* Crossno v. State, 2005 WL 1845603 (Tex.App.–Corpus Christi, August 4, 2005, no pet.) (memo. op.) (not designated for publication) (also applying case law concerning possession of controlled substance to prosecution for possession of anhydrous ammonia under section 481.124).

The arguments of counsel also emphasized the State's burden to show appellant was aware of the presence of the ammonia. When reviewing the charge with the jury during final argument, the prosecutor told them that the definition of possession was "the most important thing for you to deliberate on." When discussing extraneous offenses she told the jury it could consider such evidence in "determining whether or not this [d]efendant had knowledge, had the intent, preparation, plan knowledge [sic] to possess the anhydrous ammonia." She returned to the issue of possession later in her argument and read the definition and the "voluntary act" language from the charge. From that and other instances, the State's argument made clear that the jury must find appellant was aware the ammonia was present to convict him as the possessor.

Appellant's counsel also walked the jury through the definition of possession in the charge and agreed with the prosecutor that possession "is the crucial part of this trial." He proceeded to read the definition of possession and emphasized the requirement of voluntary possession. Counsel argued further, "What does this boil down to? I think y'all have kind of picked up on this, I'm sure you have. Knowledge. Knowledge is what we're talking about. The State is trying to show you that Mr. Scott had knowledge of what was in that pickup." After attacking each of the links argued by the State, he concluded by emphasizing the knowledge required for voluntary possession. The State's closing argument contains nothing suggesting that the jury could convict appellant without finding he was aware the ammonia was in the truck.

Having considered the entire charge, the evidence presented and the arguments of counsel, we conclude appellant has not shown the omission of the intentional or

13

knowing mental state modifying possession in the court's charge caused him such egregious harm as to deny him a fair and impartial trial. Appellant's fifth issue is overruled.

By his sixth issue, appellant raises an additional claim of charge error. Here he contends the presumption of intent to manufacture created by section 481.124(b) improperly shifted the burden to him to disprove intent. We disagree.

As explained above, because appellant made no objection to the charge, if we find error our review is limited to whether the error produced egregious harm for appellant.

The jury was instructed from section 481.124(b) of events that if found beyond a reasonable doubt raise a presumption of intent to unlawfully manufacture methamphetamine. One event the charge listed was possession of anhydrous ammonia in an unauthorized container. In the same numbered section of the charge the court added the instruction of Penal Code section 2.05(a)(2). Tex. Pen. Code Ann. § 2.05(a)(2) (Vernon 2003). The section 2.05 instruction converted the mandatory presumption of section 481.124(b) into a permissive presumption. *See Willis v. State,* 790 S.W.2d 307, 310 (Tex.Crim.App. 1990) (permissive presumption allows but does not require jury to infer fact from predicate fact). Permissive presumptions do not lessen the State's burden of proof. *Id.* A permissive presumption places no burden on the accused to disprove the presumed fact. *Id.*

To convict appellant, the jury had to find appellant intended to unlawfully manufacture methamphetamine. If it credited the predicate evidence of possession so that it could rightly presume intent to manufacture, it was only after hearing evidence and

14

argument that appellant knowingly possessed anhydrous ammonia in an unauthorized container.

We find the court did not err in charging the jury on the presumption of intent to manufacture arising from possession in an unauthorized container. The burden of proof of intent to manufacture was not shifted to appellant. We overrule appellant's sixth issue.

Issues Three and Four - Sufficiency of Evidence

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Hampton v. State,* 165 S.W.3d 691, 693 (Tex.Crim.App. 2005). The standard is the same whether applied to direct or circumstantial evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The standard fully recognizes the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 319. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979). This means when performing a legal sufficiency review we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the trier of fact. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), *cert. denied,* 529 U.S. 1131, 120 S. Ct. 2008, 146 L. Ed. 2d 958 (2000). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v.*

*State,* 30 S.W.3d 394, 406 (Tex.Crim.App. 2000). The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997); *Barnum v. State,* 7 S.W.3d 782, 787-88 (Tex.App.–Amarillo 1999, pet.ref'd). To prove by factual links an accused's care, custody, or control of contraband it is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial. *Evans v. State,* 202 S.W.3d 158, 162 (Tex.Crim.App. 2006).

Evidence supporting guilt, though legally sufficient, may be factually insufficient because it is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or because evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006); *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). In a factual sufficiency review, we consider all the evidence, in a neutral light. *Marshall*, 210 S.W.3d at 625; *Watson*, 204 S.W.3d at 414. Although an appellate court's authority to review factual sufficiency permits the court to disagree with the fact finder's determinations, the appellate court must accord them due deference, particularly those determinations concerning the weight and credibility of the evidence. *Johnson*, 23 S.W.3d at 9. When there is a conflict in the evidence, we may not find the evidence factually insufficient simply because we disagree with the jury's resolution of the conflict. Rather, we must first be able to say, with some objective basis in the record, that the great weight and preponderance of all the evidence contradicts the jury's verdict. *Watson*, 204 S.W.3d at 417. We must also discuss the evidence that,

according to the appellant, most undermines the jury's verdict. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

Turning first to the question of intentional and knowing possession of anhydrous ammonia, we note appellant was the lone passenger of the pickup driven by Berryhill. Trooper Johnson testified that in response to his inquiry of their origin and destination, appellant said he and Berryhill had just "picked up" the vehicle. Berryhill gave Johnson permission to search the vehicle. According to Johnson, appellant appeared worried on learning of Berryhill's consent to search. Johnson opined that appellant's countenance conveyed "a look that the knew he was in trouble." While searching the passenger side of the vehicle Johnson encountered an odor that he "recognized...right of[f] the bat to be ammonia." In the toolbox of the pickup, Johnson discovered an unauthorized container that according to a subsequent test contained anhydrous ammonia. The toolbox was located directly behind appellant in the bed of the vehicle.

The jury could have believed appellant possessed a measure of control of the vehicle at the time of the stop by Johnson. Specifically, Jimmy Lee Hale testified he owned the pickup and, from jail, gave instructions for appellant to sell the vehicle for him and place the proceeds in his inmate trust account. According to Hale, from time to time appellant borrowed the truck for use in his roofing business. Johnson testified some items in the bed of the truck at the time of the stop, including a toolbox, tools, cooler and wheelbarrow, belonged to appellant and his father. There was also evidence at trial that the DPS previously stopped appellant for a traffic violation while he was driving the pickup.

17

We find that the logical force of all the evidence sufficiently linked appellant to the propane tank in the vehicle. Accordingly, we conclude that the evidence appellant intentionally and knowingly possessed the anhydrous ammonia Trooper Johnson found in the pickup was legally and factually sufficient. We overrule issues three and four as they pertain to the issue of possession of anhydrous ammonia.

Appellant further challenges the sufficiency of the State's proof that the tank in question contained anhydrous ammonia. The State relies on a statutory presumption to establish this element. Applicable to this case, section 481.124 provides that a substance in a container or receptacle not designed and manufactured to lawfully hold or transport anhydrous ammonia is "presumed" to be anhydrous ammonia if a properly administered field test of the substance using a testing device or instrument designed and manufactured for that purpose produces a positive result for anhydrous ammonia.

DPS narcotics officer Tommy Salmon testified that a propane tank is not an approved container for anhydrous ammonia. At the stop location, Salmon tested the contents of the propane tank in question with a Drager pump system, which, according to his testimony, is a test for determining the presence of ammonia. Salmon testified in his opinion the tank contained ammonia. DPS chemist Scott Williams rendered the opinion at trial that the tank in question contained anhydrous ammonia. There was no contrary evidence. Therefore, the jury was allowed to "presume" that the tank contained anhydrous ammonia. We overrule issues three and four as they pertain to the issue of the presence of anhydrous ammonia.

18

The final element of the State's case challenged by appellant was proof of intent to manufacture methamphetamine. Trooper Salmon testified without objection that, based on his training and experience as a narcotics officer, anhydrous ammonia has two uses: as a fertilizer in farming and to manufacture methamphetamine. Earlier in trial, Trooper Johnson rendered the same opinion. DPS chemist Scott Williams explained anhydrous ammonia is lawfully used as fertilizer and unlawfully used in the manufacture of methamphetamine. Under section 481.124 an intent to unlawfully manufacture the controlled substance methamphetamine is presumed if the actor possesses or transports anhydrous ammonia in a container or receptacle that is not designed and manufactured to lawfully hold or transport anhydrous ammonia. *See* section 481.124(b)(1).

According to Salmon and Williams, those using anhydrous ammonia for agriculture must keep the substance in an approved container, and a propane tank is not an approved container. As to these facts there was not contrary evidence. Therefore, the jury was free to "presume" appellant possessed the intent to manufacture methamphetamine, provided they found the container or receptacle in his possession actually contained anhydrous ammonia. *See* section 481.124(b)(1). Issues three and four are overruled as to the element of "intent to manufacture" methamphetamine.

In his factual sufficiency challenge, appellant assails the strength of evidence linking him to the ammonia by urging the implausibility of the tank leaking at the time of the stop. Otherwise, argues appellant, Johnson would have smelled the ammonia at the inception of the stop. To follow this logic means, and as appellant claims, the tank suddenly began

leaking during the stop. Johnson's testimony was not presented according to a time line. Neither side presented evidence of the lapse between the inception of the stop and the moment Johnson initially smelled ammonia. Johnson did testify he "immediately" took Berryhill to the rear of his patrol car and smelled ammonia when he began searching the passenger side of the pickup. Moreover, appellant's link to the ammonia was shown by the evidence of possession which is detailed above.

Having considered all the evidence in a neutral light, we find the jury was rationally justified in finding beyond a reasonable doubt that appellant intentionally and knowingly possessed anhydrous ammonia with intent to manufacture the controlled substance, methamphetamine. Likewise, we do not find the jury's verdict so against the great weight and preponderance of the evidence to be clearly wrong and manifestly unjust. We overrule appellant's third and fourth issues.

## Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

James T. Campbell
Justice

Publish.

Quinn, C.J., concurring.
Pirtle, J., dissenting.

20