

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00439-CR

JOSEPH EDWIN WILSON                                          APPELLANT

V.

THE STATE OF TEXAS                                                STATE

----------

## FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

In five points, Appellant Joseph Edwin Wilson appeals his conviction and sentence for possession of anhydrous ammonia with intent to manufacture a controlled substance. In points one and two, he contests the sufficiency of the evidence; in point three, he complains about an instruction included in the court's charge; in point four, he asserts that his counsel was ineffective; and in point five,

---

[1]*See* Tex. R. App. P. 47.4.

he claims that there exists a "fatal variance" between the evidence presented at trial and the enhancement allegation to which he pled true. We affirm.

## Background Facts and Procedural History

A search warrant executed at a Wichita County house where Appellant and a companion were roused one morning netted materials commonly used in the illicit production, delivery, and consumption of methamphetamine. Among the seized materials was an aqueous solution officers extracted from a plastic water cooler in a shed behind the house. A sample of the solution was sent to the Department of Public Safety laboratory in Abilene where chemical analysis showed that it contained ammonia. The State charged Appellant with possession of anhydrous ammonia with intent to manufacture methamphetamine, a jury found him guilty, he pled true to an enhancement allegation, and the trial court sentenced him to thirty-five years' confinement.

## Sufficiency of the Evidence

In his first two points, Appellant challenges the sufficiency of the evidence to support his conviction. We review challenges to the sufficiency of the evidence by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

2

The jury found Appellant guilty of possessing certain chemicals with intent to manufacture a controlled substance. The health and safety code makes it an offense for a person, with intent to unlawfully manufacture a controlled substance, to possess anhydrous ammonia. Tex. Health & Safety Code Ann. § 481.124(a)(1) (West 2010).

Two presumptions from the health and safety code apply in this case. The first, at issue in Appellant's third point, addressed below, is that intent to unlawfully manufacture the controlled substance methamphetamine is presumed if the person possesses anhydrous ammonia in a container or receptacle that is not designed and manufactured to lawfully hold or transport anhydrous ammonia. *Id.* § 481.124(b). The second, at issue in Appellant's first point, is that a substance is presumed to be anhydrous ammonia if it is in a container or receptacle that is not designed and manufactured to lawfully hold or transport anhydrous ammonia, if a properly administered field test of the substance using a testing device or instrument designed and manufactured for that purpose produces a positive result for anhydrous ammonia, or if a laboratory test of a water solution of the substance produces a positive result for ammonia. *Id.* § 481.124(c)(2).

Appellant contends in his first point that the evidence is insufficient to show that the substance seized from a shed in the backyard was anhydrous ammonia because the jury was not instructed on the applicable presumption. He concedes that laboratory testing of a water solution of the substance taken from a water

3

cooler in the backyard yielded ammonia. But he argues that the evidence nonetheless is insufficient because the jury was not instructed to presume that the substance was *anhydrous* ammonia if it found that the above requirements of the presumption were met, that is, that the substance was found in an unapproved container and that a laboratory test of a water solution of the substance produced a positive result for ammonia. In other words, Appellant argues that although the evidence supports the presumption, because the jury was not told to make it, the evidence is insufficient. We disagree.

Sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Byrd*, 336 S.W.3d at 246; *Malik*, 953 S.W.2d at 240.

As discussed relative to Appellant's third point below, the jury charge included half of the presumptions germane to this case. A hypothetically correct charge would have included both. That is, it would have instructed the jury that it could presume the substance at issue was anhydrous ammonia because, as Appellant concedes, that presumption is supported by evidence that laboratory testing of a water solution of a substance seized from an unapproved container

4

produced a positive result for ammonia. *See* Tex. Health & Safety Code Ann. § 481.124(c)(2); *Scott v. State*, 253 S.W.3d 736, 746 (Tex. App.—Amarillo 2007, pet. ref'd).

Because the evidence is undisputed that an aqueous solution of the substance seized from a water cooler, which is not an approved container, tested positive for ammonia, and that such a result leads to the presumption that the substance is anhydrous ammonia, we hold that the evidence is sufficient under a hypothetically correct charge to support a reasonable juror's belief beyond a reasonable doubt that the seized substance was anhydrous ammonia. We overrule Appellant's first point.

In his second point Appellant contends that the evidence is insufficient to link him to the anhydrous ammonia found in the shed behind the house he occupied. Although anhydrous ammonia is not an unlawful substance per se, as we have said, it is unlawful if possessed with the intent to unlawfully manufacture a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.124(a)(1).

When it is possessed with the requisite intent, then we treat anhydrous ammonia as a controlled substance, and the law pertaining to the possession of controlled substances is, therefore, useful to our analysis. *See Wootton v. State*, 132 S.W.3d 80, 86 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). To prove unlawful possession of a controlled substance, the State must show that the accused: (1) exercised control, management, or care over the substance; and (2) knew the matter possessed was contraband. *Poindexter v. State*, 153

S.W.3d 402, 405 (Tex. Crim. App. 2005); *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995); *see* Tex. Health & Safety Code Ann. § 481.002(38). Whether this evidence is direct or circumstantial, it must establish, to the requisite level of confidence, that the accused's connection with the contraband was more than just fortuitous. *Poindexter*, 153 S.W.3d at 405–06; *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). This is the whole of what formerly was known as the "affirmative-links rule." *Poindexter*, 153 S.W.3d at 405–06; *Brown*, 911 S.W.2d at 747. The court of criminal appeals has recognized, however, that the word "affirmative" adds nothing to the plain meaning of "link" and has dropped it when assessing the sufficiency of circumstantial evidence to show possession. *See Evans v. State*, 202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006).

The rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's contraband. *Poindexter*, 153 S.W.3d at 406; *see United States v. Phillips*, 496 F.2d 1395, 1397 (5th Cir. 1974) ("Proof of mere proximity to contraband is not sufficient to establish actual constructive possession or the element of knowledge."), *cert. denied*, 422 U.S. 1056 (1975). The rule simply restates the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house. *Poindexter*, 153 S.W.3d at 406 (citing *United States v. Smith*, 930 F.2d 1081, 1086–87 (5th Cir. 1991)). Thus, the court of

6

criminal appeals has formulated the rule that when a person is not in exclusive possession of the place where a controlled substance is found, it cannot be concluded that he had knowledge of and control over the contraband unless there are additional independent facts and circumstances linking him to it. *See Poindexter*, 153 S.W.3d at 406; *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981).

The record shows that another person was present in the house with Appellant and as close to the anhydrous ammonia as Appellant was when the warrant was executed. Under these circumstances, it was the State's burden to show additional independent facts and circumstances linking Appellant to the anhydrous ammonia seized from the shed. *See Poindexter*, 153 S.W.3d at 406; *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988); *Deshong*, 625 S.W.2d at 329.

Factors that may link an accused to contraband include whether (1) the accused was present when the search was conducted; (2) the contraband was in plain view; (3) the accused was in close proximity to and had access to the contraband; (4) the accused was under the influence of narcotics when arrested; (5) the accused possessed other contraband or narcotics when arrested; (6) the accused made incriminating statements when arrested; (7) the accused attempted to flee; (8) the accused made furtive gestures; (9) there was an odor of contraband; (10) other contraband or drug paraphernalia were present; (11) the accused owned or had the right to possess the place where the drugs were

7

found; (12) the place where the drugs were found was enclosed; (13) the accused was found with a large amount of cash; and (14) the conduct of the accused indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12; *Isbell v. State*, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.). No set formula exists to dictate a finding of sufficient links to support an inference of knowing possession of contraband. *Isbell*, 246 S.W.3d at 238; *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). The number of factors present is not as important as the logical force or the degree to which the factors, alone or in combination, tend to link the defendant to the contraband. *Isbell*, 246 S.W.3d at 238; *Bates v. State*, 155 S.W.3d 212, 216–17 (Tex. App.—Dallas 2004, no pet.); *see Evans*, 202 S.W.3d at 162.

Applying these factors to the evidence in the record reveals that most of them favor the verdict. Appellant was present when the officers conducted the search—Wichita County District Attorney's Office Investigator Bobby Dilbeck testified that Appellant was in the master bedroom when the warrant was executed. Although the anhydrous ammonia was not in plain view—it was in a plastic container in a shed behind the house—it was nearby, and Appellant had access to it—he merely had to step out the back door, cross a short distance of backyard, and enter the shed.

There is no evidence that Appellant was under the influence of narcotics when he was arrested, that he attempted to flee, that he made any furtive

gestures, or that he was found with a large amount of cash. But there is evidence that he possessed other contraband and narcotics at the time.

Numerous items and materials commonly used in the production of methamphetamine were found throughout the property. A trash bag containing salt and a wet paper filter through which someone had recently poured ether from a punched can were found in the garage. A can of Coleman camp fuel used as solvent, a can of lacquer thinner for cleaning up, and a food grinder used for grinding pseudoephedrine pills were found in a nonfunctional truck parked in the driveway. In the bed of the truck, the officer discovered a homemade hydrogen chloride gas generator made from a pop bottle. Lithium batteries in varying degrees of denuding—peeled to allow extraction of the internal lithium strips that serve as catalysts for the chemical reactions necessary to methamphetamine production—were found throughout the house.

There was a powerful chemical odor of ammonia and ether throughout the house. Officers found a spray bottle of odor eliminator on Appellant's bedside table. Someone had written on the spray bottle in black marker, "Wilson's holy water." Drug paraphernalia, too, was present in the house—glass smoking pipes, methamphetamine residue, digital scales, and straws for ingesting methamphetamine were found in the kitchen and master bedroom. In addition, small baggies containing a white powdery substance suspected to be methamphetamine were found in the kitchen and dining room and in a drawer

9

beside the bed in the master bedroom. Appellant admitted that methamphetamine found in a purse in the kitchen-dining area belonged to him.

It is undisputed that Appellant owned or had the right to possess the place where the contraband was found. The search was executed at 1330 Pecanway Drive around five o'clock in the morning. Officers found Appellant in bed in the master bedroom. The clerk's record contains Appellant's request for court appointed counsel, upon which he listed his address as 1330 Pecanway Drive. Although this document was not admitted in evidence, there is merit to the State's argument that given its presence in the court's file, it may have been futile for Appellant to dispute that he lived there. Further, Appellant's counsel argued at closing, "Why would somebody make methamphetamine somewhere else and then bring all the trash *to their own house* to smell up the place?"

The place where the anhydrous ammonia was found was enclosed—it was found in an orange and white plastic water cooler inside a shed directly behind the house and within the fence that surrounded the house. Finally, Appellant's conduct indicated a consciousness of guilt—he claimed ownership of methamphetamine seized from a purse found in the house.

Considering all these factors, we hold that their cumulative logical force would support a rational juror's belief beyond a reasonable doubt that Appellant knowingly possessed anhydrous ammonia with intent to manufacture methamphetamine. *See Poindexter*, 153 S.W.3d at 405–06; *Brown*, 911 S.W.2d

10

at 747; *Scott*, 253 S.W.3d at 746; *Wootton*, 132 S.W.3d at 90. Accordingly, we overrule Appellant's second point.

## Jury charge

In his third point, Appellant contends that the trial court erred and caused him egregious harm by including the following paragraph, numbered 16, in the jury charge: "An intent to unlawfully manufacture the controlled substance, methamphetamine[,] is presumed if the actor possesses anhydrous ammonia in a container or receptacle that is not designed and manufactured to lawfully hold or transport anhydrous ammonia."

We review claims of egregiously harmful jury-charge error by first deciding whether the complained-of portion of the charge is, in fact, erroneous. *See Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). If there is no error, our inquiry ends. *See id.*; *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). If, on the other hand, there is error in the charge, we then must decide whether the error caused the complaining party egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

Appellant argues that the trial court erred by including paragraph 16 in the charge because the State did not present expert testimony on "the design and manufacture of anhydrous ammonia containers," the standards for approved

11

containers, and how the container at issue in this case was substandard. He argues that he was egregiously harmed for the same reason.

The State responds that it presented expert testimony that established that the plastic water cooler from which the anhydrous ammonia solution was seized was not designed and manufactured to lawfully hold anhydrous ammonia. We agree.

Under section 2.05 of the penal code, a trial court must submit the issue of the existence of a presumed fact to the jury if there is sufficient evidence of the facts that give rise to the presumption. Tex. Penal Code Ann. § 2.05(a)(1) (West 2011). In this case, Investigator Dilbeck, an officer with nearly thirty years experience investigating narcotics crimes, testified that due to its highly corrosive nature, anhydrous ammonia had to be kept in an approved container and that approved containers are made of metal, not plastic. He noted that the container in which he found the anhydrous ammonia in this case was made of plastic and that it had no markings to indicate that it was approved to hold anhydrous ammonia, and that, in fact, it appeared to be a water cooler that one would find on the sidelines of a high school football game filled with Gatorade. When specifically asked whether the container was approved to hold anhydrous ammonia, he testified, "Definitely not." He further testified that the container would present a safety hazard if anhydrous ammonia were allowed to stay stored inside it. We hold that this evidence is sufficient to support the trial court's

including the presumption instruction in the charge, and we overrule Appellant's third point.

## Date of Prior Conviction and Effectiveness of Counsel

In his fifth point, Appellant contends that, between the allegations in the enhancement paragraph and the State's evidence, there is a fatal variance that he did not waive by pleading true that entitles him to a new punishment hearing. In his fourth point, he claims that his counsel was ineffective for letting Appellant plead true to the enhancement allegation.

The State alleged in the enhancement paragraph of the indictment that Appellant was previously convicted for a felony drug offense, possession of methamphetamine, on January 24, 2003. Appellant pled true to the enhancement allegation, and the evidence showed that he was placed on probation on January 24, 2003, and that his probation was revoked on May 27, 2005. After hearing the evidence and the arguments of counsel, the trial court found the enhancement allegation true and sentenced Appellant to thirty-five years' confinement.

Appellant cites no cases but invokes a rule that the State cannot use a prior conviction to enhance a subsequent offense until the prior conviction becomes "final." For enhancement by prior conviction, the State is required to allege and prove that the defendant was previously convicted and that the conviction became final before the primary offense was committed. *Diremiggio v. State*, 637 S.W.2d 926, 928 (Tex. Crim. App. [Panel Op.] 1982). If the defendant

13

is placed on community supervision, there is no final conviction for purposes of enhancement of punishment or habitual offender treatment until the community supervision is revoked. *Ex parte Langley*, 833 S.W.2d 141, 143 (Tex. Crim. App. 1992); *Ex parte Murchison*, 560 S.W.2d 654, 656 (Tex. Crim. App. 1978). Commentators have noted that if the defendant was given community supervision but community supervision was revoked before commission of the primary offense, the case is regarded as though a prison sentence had been given initially. 43A George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice & Procedure* § 46.91 (3d ed. 2011). Therefore, the conviction is not rendered nonfinal because community supervision had been granted. *Id.* The date of finality of the conviction is the date of community supervision revocation. *Capuchino v. State*, 389 S.W.2d 296, 299 (Tex. Crim. App. 1965) *cert. denied*, 386 U.S. 928 (1967).

Prior convictions used as enhancements must be pled in some form, but they need not be pled in the indictment. *Brooks v. State*, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997); *Smith v. State*, No. 02-07-00267-CR, 2008 WL 1777866, at *1 (Tex. App.—Fort Worth Apr. 17, 2008, no pet.) (mem. op., not designated for publication). The accused is entitled to a description of the judgment of former conviction that will enable him to find the record and make preparation for a trial on the question of whether he is the convict named in the judgment. *Villescas v. State*, 189 S.W.3d 290, 293 (Tex. Crim. App. 2006) (quoting *Hollins v. State*, 571 S.W.2d 873, 875 (Tex. Crim. App. 1978)).

14

It is not necessary to allege prior convictions for the purpose of enhancement with the same particularity that must be used in charging on the primary offense. *Freda v. State*, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986). Variances between an enhancement allegation and the proof in regard to cause numbers, courts, and dates of conviction have all been held to be immaterial. *See Rooks v. State*, 576 S.W.2d 615, 616–17 (Tex. Crim. App. 1978) (affirming when the indictment alleged a prior conviction in the "Criminal District Court of Harris County" and the proof showed that the conviction originated in the "184th District Court of Harris County"); *Thompson v. State*, 563 S.W.2d 247, 251 (Tex. Crim. App. [Panel Op.] 1978) (holding two-day variance between date of prior conviction as alleged in indictment and as proved by evidence was immaterial); *Bray v. State*, 531 S.W.2d 633, 635 (Tex. Crim. App. 1976) (noting that clerical error in the number of the district court did not render proof of prior conviction at variance with allegations in indictment).

Moreover, neither the indictment nor the charge must allege or recite the dates of conviction as long as the allegations are specific enough to apprise the defendant of the conviction being used against him and as long as the proof at the trial shows the necessary succession of offenses and final convictions. *Hernandez v. State*, 530 S.W.2d 563, 568 (Tex. Crim. App. 1975).

Here, the record indicates that the indictment correctly alleged the cause number of the prior offense, the convicting court and its location, the name of the offense, and the fact that the offense was a felony. Appellant does not contend

15

that he did not have actual pretrial notice of the conviction the State intended to use, including the true date it was issued, or that he was surprised, misled, unable to prepare his defense, or otherwise harmed.

Because the State was not required to allege the dates of the prior punishment-enhancing conviction in the indictment, whether the State alleged the date the conviction became final for enhancement purposes or the date the original judgment was entered is immaterial. Thus, whatever variance existed between the enhancement allegation and the proof was not fatal, and the evidence is sufficient to support the finding of true. *See Thompson*, 563 S.W.2d at 250–51; *Benton v. State*, 770 S.W.2d 946, 947–48 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). Accordingly, we overrule Appellant's fifth point. And because any variance between the date alleged in the indictment and the proof at trial was immaterial, we further hold that Appellant's counsel was not ineffective for failing to object to it, and we overrule Appellant's fourth point. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009).

**Conclusion**

Having overruled all of Appellant's points, we affirm the trial court's judgment.

                                              LEE GABRIEL
                                              JUSTICE

PANEL: WALKER, McCOY, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 1, 2012