NO. 07-10-00081-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 25, 2010

THEODORE EDWARD WHITTLEY, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 100TH DISTRICT COURT OF CARSON COUNTY;

NO. 4005; HONORABLE RICHARD DAMBOLD, JUDGE

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant Theodore Edward Whittley appeals his conviction and sentence of seven years confinement in prison for the possession of pseudoephedrine with the intent to manufacture methamphetamine.[1] We will affirm.

Background

Appellant and Holly Mesneak were passengers in a vehicle driven by Leonard Kane. An officer executed a traffic stop of the vehicle. Kane was unable to produce a driver's license. The officer described Kane as shaking and "very fidgety." Appellant

---

[1] Tex. Health & Safety Code Ann. § 481.124 (a)(3) (Vernon 2010).

and Mesneak also were shaking and would not look at the officer. Mesneak told the officer she borrowed the vehicle but could not identify the lender. Appellant told the officer they were going to visit a friend of Mesneak's.

After the officer saw Kane attempt to discard a baggie containing a white powder, and after a drug detection dog alerted on the vehicle, the officer searched its interior and trunk. Appellant had been seated in the back seat. There the officer found a five-gallon gasoline can and a hose with a funnel duct-taped to one end. In the trunk, the officer found various materials, including 162.74 grams of pseudoephedrine. A Department of Public Safety forensic scientist opined at trial that pseudoephedrine in this quantity was for production of methamphetamine. Apparently in the trunk, the officer found two glass containers filled with unidentified liquids. The officer recovered thirty-nine items from the vehicle which he opined would be useful in manufacturing and delivering illegal drugs. He further opined the occupants of the vehicle were preparing to manufacture methamphetamine. The three occupants were arrested and transported to the county jail. There, Mesneak told the officer that she, appellant and Kane planned to steal anhydrous ammonia and manufacture methamphetamine.

Appellant was indicted for the third-degree felony offense of transporting anhydrous ammonia with intent to manufacture methamphetamine.[2] On the State's motion, the trial court signed an order amending the indictment to charge possession of pseudoephedrine with intent to manufacture methamphetamine. Appellant was

---

[2] Tex. Health & Safety Code Ann. § 481.124(a)(1) (Vernon 2010).

convicted of the indicted offense and sentenced to seven years confinement. Appellant appeals.

Analysis

Appellant raises two issues on appeal. First, he argues the indictment was "invalid." Second, he asserts the evidence was legally and factually insufficient to support the verdict.

Amendment of the Indictment

Appellant asserts the indictment was invalid because it was not properly amended and even had it been properly amended it charged appellant with a different statutory offense for which he was not indicted by the grand jury. On these grounds, appellant concludes the trial court lacked jurisdiction to try the case. Appellant did not raise these objections in the trial court but argues they are fundamental in character and may be raised for the first time on appeal. We disagree.

The Texas Constitution guarantees a person accused of a felony offense the right to indictment by a grand jury. Tex. Const. art. I, § 10; *Cook v. State,* 902 S.W.2d 471, 475 (Tex.Crim.App. 1995). An indictment is "a written instrument presented to a court by a grand jury charging a person with the commission of an offense." Tex. Const. art. V, § 12(b); *Teal v. State,* 230 S.W.3d 172, 183 (Tex.Crim.App. 2007). To constitute an indictment within this definition, an instrument must charge a person with the commission of an offense. *Cook,* 902 S.W.2d at 477. "The presentment of an indictment or information to a court invests the court with jurisdiction of the cause." Tex. Const. art. V, § 12(b). "Some defects . . . render the instrument a non-indictment."

3

*Duron v. State,* 956 S.W.2d 547, 550 (Tex.Crim.App. 1997) (citing *Cook,* 902 S.W.2d at 478). Such "defects [are] of the type that would make it impossible for the defendant to know with what offense he had been charged." *Duron,* 956 S.W.2d at 550. Otherwise, "[i]f the defendant does not object to a defect . . . of form or substance in an indictment . . . before the date on which [trial begins,] he waives and forfeits the right to object . . . and he may not raise the objection on appeal . . . ." Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005); *Hoitt v. State,* 30 S.W.3d 670, 674 (Tex.App.--Texarkana 2000, no pet.). An indictment may not be amended over a defendant's objection as to form or substance if the amended indictment charges the defendant with an additional or different offense. Tex. Code Crim. Proc. Ann. art. 28.10(c) (Vernon 2006).

Appellant originally was indicted for transporting anhydrous ammonia in April 2008. In June 2009, the State filed its motion to amend the indictment. The motion specified the requested amending language charging appellant with possession of pseudoephedrine with intent to manufacture methamphetamine. The court granted the motion by written order in July 2009. The court's order restates, in its entirety, the indictment as amended.[3] The record contains no objection by appellant. Rather the

---

[3] An appendix to the State's brief also contains a copy of the original indictment interlineated to state the charge for which appellant was tried. *See Head v. State,* 299 S.W.3d 414, 437-38 (Tex. App.--Houston [14th Dist.] 2009, pet. refused)*; cf. Ledezma v. State,* No. 07-09-0372-CR, 2010 Tex. App. Lexis 5600, at *1-3 (Tex.App.--Amarillo July 16, 2010, n.p.h.) (mem. op., not designated for publication) (concerning requirements for proper amendment of indictment). The copy contains what appear to be the trial judge's initials. On the day of trial, before the reading of the indictment, the trial court judge made reference to his amendment of the indictment by interlineation. According to the State's brief, the interlineated copy "was never refiled with the clerk's office, nor was it rescanned by the clerk's office." Because the document is not part of the appellate record, we may not afford it any consideration in resolving appellant's issues. *See Booth v. State,* 499 S.W.2d 129, 135 (Tex.Crim.App. 1973) (appellate court is not

4

case proceeded to trial on November 30. The indictment in its original form named appellant and charged him with an offense. The indictment therefore vested jurisdiction in the trial court. Appellant's complaints of the trial court's amendment procedure and the charge of a different offense, regardless of merit, did not retrospectively render the indictment void and strip the trial court of jurisdiction. In other words, the indictment invested jurisdiction of appellant's case in the trial court. Within the scope of that jurisdiction the amending procedure and language, if erroneous, were not fundamental errors but complaints for the consideration, in the first instance, of the trial court. Absent a sufficient objection and express or implicit ruling by the trial court, nothing is preserved for appellate review. *See* Tex. Code Crim. Proc. Ann. arts. 1.14(b) (Vernon 2005) & 28.10(c) (Vernon 2006); Tex. R. App. P. 33.1; *Sanchez v. State*, 120 S.W.3d 359, 367 (Tex.Crim.App. 2003) ("any error in the charging instrument must be objected to in a timely . . . and specific manner, and any unobjected-to error in the instrument is not 'fundamental'").

Appellant's first issue is overruled.

Sufficiency of the Evidence

By his second issue, appellant contends the evidence of guilt was legally and factually insufficient to support his conviction. His challenge focuses on the evidence of appellant's knowing possession of the pseudoephedrine.

authorized to consider documents attached to appellate brief which are not part of the record).

Proof of the indicted offense required the State establish that appellant, with intent to unlawfully manufacture a controlled substance (methamphetamine), possessed[4] a chemical precursor (pseudoephedrine). Tex. Health & Safety Code Ann. §§ 481.002(51)(O) and 481.124(a)(3) (Vernon 2010).

A person commits a possessory offense only if he voluntarily possesses the prohibited item. Tex. Penal Code Ann. § 6.01(a) (Vernon 2003). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *Id.* at § 6.01(b).

Evaluating the sufficiency of evidence in other prosecutions under § 481.124, courts have applied case law on possession of a controlled substance. *See Scott v. State,* 253 S.W.3d 736, 743 (Tex.App.--Amarillo 2007, pet. refused) (applying links analysis in charge error evaluation and in evidentiary sufficiency review); *Wootton v. State,* 132 S.W.3d 80, 86-87 (Tex.App.--Houston [14th Dist.] 2004, pet. refused) (reviewing sufficiency of evidence of knowing possession of anhydrous ammonia). We will apply that body of case law here.

To prove unlawful possession of a controlled substance, the State must establish the accused exercised actual care, custody, control, or management over the

---

[4] Because § 481.124(a) does not specify a culpable mental state as to the element of possession, § 6.02(c) of the Penal Code requires a mental state of at least recklessness. *See Scott v. State,* 253 S.W.3d 736, 741 (Tex.App.--Amarillo 2007, pet. refused) (concluding § 481.124(a) requires possession of anhydrous ammonia be accompanied by a culpable mental state).

6

contraband and knew the matter possessed was contraband. *See* Tex. Health & Safety Code Ann. §§ 481.002(38), 481.115(a) (Vernon 2003 & Supp. 2009); *Evans v. State,* 202 S.W.3d 158, 162 (Tex.Crim.App. 2006); *Poindexter v. State,* 153 S.W.3d 402, 405 (Tex.Crim.App. 2005). Absent an admission by the accused, the knowledge element of a possessory offense must be inferred. *Gant v. State,* 989 S.W.2d 428, 433 (Tex.App.-- Houston [14th Dist.] 1999, no pet.); *United States v. Richardson,* 848 F.2d 509, 514 (5th Cir. 1988) ("proof that possession of contraband is knowing will usually depend on inference and circumstantial evidence").

It is not necessary for the State to prove the accused maintained exclusive possession of the contraband; rather, joint possession is sufficient to sustain a conviction. *Cude v. State,* 716 S.W.2d 46, 47 (Tex.Crim.App. 1986). If the accused did not maintain exclusive control of the location of the contraband, however, the State must offer additional, independent facts linking the accused to the contraband. *Poindexter,* 153 S.W.3d at 406; *Evans,* 202 S.W.3d at 162. The presence or proximity of the accused to the contraband, when combined with other direct or circumstantial evidence, may be sufficient to establish control, management, custody, or care beyond a reasonable doubt if the proof amounts to more than a strong suspicion or probability. *Evans,* 202 S.W.3d at 161. Ultimately, it is the logical force of the evidence that is dispositive. *See id.* at 162 (discussing links analysis).

In reviewing issues of legal sufficiency, we view the evidence in the light most favorable to the verdict to determine whether a rational fact finder could have found each element of the offense beyond a reasonable doubt. *Swearingen v. State,* 101

S.W.3d 89, 95 (Tex.Crim.App. 2003); *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App. 2001) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). If, based on all the evidence, a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen,* 101 S.W.3d at 95 (citing *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992)).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 319; 99 S.Ct. at 2789. *See also Hooper v. State,* 214 S.W.3d 9, 15 (Tex.Crim.App. 2007) (juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial). The trier of fact is the sole judge of the weight and credibility of the evidence. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Margraves v. State,* 34 S.W.3d 912, 919 (Tex.Crim.App. 2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). We must resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex.Crim.App. 2000). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper,* 214 S.W.3d at 13.

A factual sufficiency review of the evidence is "barely distinguishable" from the legal sufficiency review under *Jackson v. Virginia*. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006). A factual sufficiency review considers whether the evidence supporting guilt, though legally sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Id.*; *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). In a factual sufficiency review, we again consider all of the evidence, but now in a neutral light. *Marshall,* 210 S.W.3d at 625; *Watson*, 204 S.W.3d at 414. We must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *Laster v. State*, 275 S.W.3d 512, 518 (Tex.Crim.App. 2009); *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

Mesneak testified for the State. She told the jury that appellant helped her and Kane manufacture methamphetamine on three or four prior occasions. The three usually manufactured the drug in a car on country roads.

The night before their arrest, Mesneak, Kane, and another man, Ashley Sandlin, occupied a farmhouse. Mesneak and Kane argued and Kane left. He picked up appellant and sent him to get anhydrous ammonia. Appellant was not successful. While Kane and appellant were gone, Mesneak and Sandlin cooked methamphetamine at the farmhouse. Appellant joined them there.

The next day, Mesneak testified, she, appellant, and Kane were together "to cook some meth." When asked why, Mesneak responded they "wanted to get high."

9

Mesneak agreed that Kane "did most of the cooking." Before departing the farmhouse, Kane loaded Mesneak's 1982 Oldsmobile with items used to manufacture methamphetamine. He was indecisive whether to leave the items at the farmhouse, put them in the vehicle's passenger compartment for easy disposal in case of police attention, or stow them in the vehicle's trunk. Ultimately, Kane "decided to throw it all in the trunk." Nothing necessary for manufacturing methamphetamine was left at the farmhouse. Kane placed the gasoline can and hose with attached funnel in the back seat. Mesneak testified the gasoline can and hose are used to gather anhydrous ammonia for manufacturing methamphetamine. Kane placed other items including pseudoephedrine and batteries in the trunk. Kane, appellant, and Mesneak intended to use the items placed in the vehicle to manufacture methamphetamine that day.

On direct examination, Mesneak affirmed that appellant knew what was in the vehicle because he witnessed Kane load the vehicle. But on cross-examination, she agreed she might have confused Sandlin with appellant and agreed she was not certain appellant saw Kane place pseudoephedrine in the trunk of the vehicle.

With the vehicle loaded, the three set out. Mesneak brought the methamphetamine she cooked the night before. The day's plan to cook methamphetamine involved first going to the house of Mesneak's friend to sell methamphetamine cooked the previous night, using the proceeds to buy gasoline for the car, and then locating anhydrous ammonia. Mesneak further agreed that once appellant obtained the anhydrous ammonia, Kane would cook the methamphetamine. As on prior occasions, appellant's intended compensation for assisting in manufacturing

10

the methamphetamine was a share of the drug.  On cross-examination, Mesneak acknowledged she did not hear Kane tell appellant a "meth lab" was stashed in the trunk of the vehicle but she did hear him indicate they were going to collect anhydrous ammonia.  Mesneak also acknowledged it was possible that appellant thought he was to obtain anhydrous ammonia so Kane could "come back and cook later."  She agreed she did not know the extent of appellant's knowledge.

The arresting officer testified of the nervousness of appellant and the other occupants of the vehicle.  Appellant, like Kane, was shaking.  Appellant told the officer that he, Kane, and Mesneak were going to visit a friend of Mesneak's.  The officer observed Kane tear a plastic bag containing methamphetamine.  The back seat appellant occupied also contained the items used, according to Mesneak, to obtain anhydrous ammonia for the manufacture of methamphetamine.  The vehicle did not belong to appellant and at the time of arrest he did not possess a key to its locked trunk compartment.  Testimony established the presence in the vehicle at the time of arrest of every item needed to manufacture methamphetamine, except anhydrous ammonia.  It is not uncommon, according to the officer, to manufacture methamphetamine in a vehicle.  In the opinion of the officer, appellant, Kane, and Mesneak were preparing to manufacture methamphetamine.  On cross-examination, the officer agreed that he had no evidence of appellant's knowledge that the trunk contained pseudoephedrine.  He did not smell anhydrous ammonia during the stop and did not smell the inside of the container in the vehicle's back seat.  A DPS forensic scientist opined at trial that pseudoephedrine in the quantity recovered was for production of methamphetamine.

11

Appellant supports his argument with *Blackman v. State,* No. 01-08-00138-CR, 2009 Tex. App. Lexis 9717 (Tex.App.--Houston [1st Dist.] Dec. 22, 2009, pet. granted). Blackman was the front seat passenger in a rented minivan occupied by two others. He was convicted of possessing cocaine found by officers behind the driver's seat in a closed shoe box under a blanket. On appeal Blackman challenged the legal sufficiency of the evidence he exercised care, custody, or control over the cocaine. *Id.* at *10. The appellate court agreed. It observed the State's case rested entirely on Blackman's presence in the vehicle. *Id.* at *28. In determining the evidence did not supply the "additional independent factors and circumstances" necessary to sufficiently link Blackman to the cocaine, the court found no evidence Blackman had knowledge of the contents of the box or exercised control of the box. *Id.* at *22, *29.

Here, evidence tying appellant to the pseudoephedrine in the vehicle's trunk is not limited to the circumstantial. The jury was free to believe Mesneak's direct evidence of appellant's role in the planned manufacture of methamphetamine including his knowledge of the large amount of pseudoephedrine in the trunk.

The evidence gave the jury little if any reason to doubt appellant's intention to join in the manufacture of methamphetamine with Kane and Mesneak. We find that a rational juror, exercising the responsibility to resolve conflicting testimony, could have found appellant knew of the presence in the vehicle's trunk of the components necessary for methamphetamine manufacture, including the pseudoephedrine precursor. His knowledge is evidenced also by his demeanor when the officer stopped the vehicle. And, given the evidence of appellant's joinder with Kane and Mesneak in

12

the vehicle after the loading of the items necessary for the manufacture, his expressed knowledge of their destination, his ready access to the gasoline can and hose for anhydrous ammonia, his role in the day's intended manufacture and his intended share of its product, we further find that a rational juror could find appellant exercised control, management, custody or care over the pseudoephedrine precursor.

Viewing the evidence in the light most favorable to the verdict we conclude the evidence is legally sufficient to establish the charged offense. Moreover, when all the evidence is viewed in a neutral light, we conclude proof of appellant's guilt of the charged offense is neither so obviously weak as to undermine confidence in the jury's determination, nor such that it is greatly outweighed by contrary evidence. The evidence is factually sufficient. We overrule appellant's second issue.

Conclusion

Having overruled appellant's two issues, we affirm the judgment of the trial court.


James T. Campbell
Justice


Do not publish.

13